[Sac. No. 7970. In Bank. May 22, 1973.]

BARRY KENT GIBSON, Plaintiff and Appellant, v.
UNEMPLOYMENT INSURANCE APPEALS BOARD et al.,
Defendants and Respondents;
SUPERIOR MOULDING COMPANY,
Real Party in Interest and Respondent.

**COUNSEL**

Howard L. Welch for Plaintiff and Appellant.

Jonathan B. Steiner as Amicus Curiae on behalf of Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attor-

ney General, N. Eugene Hill and Carol Hunter, Deputy Attorneys General, for Defendants and Respondents.

No appearance for Real Party in Interest and Respondent.

## OPINION

TOBRINER, J.—When a claims interviewer denied plaintiff's (hereinafter petitioner) application for unemployment benefits, petitioner asked an attorney to appeal that decision to a referee. Due to a mistake in calendaring, the attorney filed the appeal three days after the expiration of the ten-day period provided by Unemployment Insurance Code section 1328. Although both section 1328 and Unemployment Insurance Appeals Board rule 5028 permit extension of the 10-day period for "good cause,"[1] the Unemployment Insurance Appeals Board has developed a narrow and rigid rule that no error of an applicant or his counsel, no matter how reasonable or excusable, can constitute "good cause."[2] Applying this rule, the referee and board dismissed petitioner's appeal. The superior court, relying on the administrative practice of the board, refused mandamus; petitioner appeals from that judgment.

We find the board's narrow construction of section 1328 subverts the remedial purposes of that section and defeats the legislative objective of providing prompt administrative adjudication of claims for unemployment benefits without recourse to technical and formal requirements. We perceive no justification for an administrative construction of section 1328 to preclude relief in cases of brief, non-prejudicial delay arising from excusable error of counsel. Finally, we conclude that on the undisputed record in the instant case petitioner has shown good cause to permit the late filing of his appeal. We therefore hold that the judgment of the superior

---

[1] Unemployment Insurance Code section 1328 reads in part: "The claimant . . . shall be promptly notified of the determination and the reasons therefor and may appeal therefrom to a referee within 10 days from mailing or personal service of notice of the determination. The 10-day period may be extended for good cause." Rule 5028 of the Unemployment Insurance Appeals Board states: "If an appeal or petition is not filed within the time permitted by the code or these rules, the referee shall issue a decision dismissing the appeal or petition unless the appellant or petitioner shows good cause for late filing. If good cause is shown, the appeal or petition shall be decided on the merits." (Cal. Admin. Code, tit. 18, § 5028.)

[2] See Matter of Courtemanche, et al, Precedent Benefit Decision 24 (1968); Matter of Olivarez, Benefit Decision 5958 (1952); Matter of Aukes, Benefit Decision 5867 (1952); Matter of Gruner, Benefit Decision 4451 (1947).

court should be reversed and the cause remanded with directions to issue mandate as prayed.

The facts of this case are undisputed. On January 24, 1971, three days after Superior Moulding Company discharged him, petitioner applied for unemployment benefits. On February 26, 1971, he received a written notice that the claims interviewer had decided that petitioner was not eligible for benefits. The notice specified that the decision was final unless an appeal was filed by March 8, 1971.

Petitioner took the notice to the Shasta County Legal Aid Society on March 4 and spoke to an attorney, who promised petitioner that he would file the appeal on petitioner's behalf. The legal aid receptionist, however, inadvertently failed to note the appeal deadline on the attorney's calendar. Petitioner's file was mingled with others of less urgency. The attorney discovered the error on March 11, 1971, and immediately filed the notice of appeal.[3]

The appeal came before the referee on April 22, 1971. Petitioner adduced testimony to explain the late filing; both petitioner and Superior Moulding Company presented evidence on the merits of petitioner's claim for unemployment benefits. Without deciding the merits of the issue, the referee dismissed the appeal on the ground that neither inadvertent clerical error nor press of business could constitute good cause for the late filing of an appeal. The Unemployment Insurance Appeals Board affirmed the referee's decision.

Petitioner then filed mandamus in the superior court to review the ruling of the board (see Code Civ. Proc., § 1094.5), invoking that court's authority to make an independent determination on the administrative record[4] of whether petitioner had shown "good cause" to extend the period for filing an appeal. The superior court, however, relied upon the board's interpretation of "good cause" as excluding excusable negligence by an applicant or his agent, and denied the writ.

The record clearly discloses that neither the appeals board nor the su-

---

[3]Petitioner's counsel further alleged that "The inadvertence in this case is attributable in large part, to the fact that the office has had an unusually heavy caseload for the past two to three weeks, and is understaffed by virtue of having lost one attorney and one legal secretary the week preceding that in which claimant first came to the office." Counsel's testimony showed the caseload increased from 165 clients in February to 259 clients in March, while the office staff declined to three attorneys and two secretaries.

[4]See *Thomas* v. *California Emp. Stab. Com.* (1952) 39 Cal.2d 501, 503-504 [247 P.2d 561]; *Cal. Portland Cement Co.* v. *Cal. Unemp. Ins. Appeals Board* (1960) 178 Cal.App.2d 263, 269 [3 Cal.Rptr. 37].

perior court based its decision upon any unique factual characteristics of petitioner's case; instead each automatically applied a rule, developed in prior administrative decisions, that no error of an applicant, his agent, or attorney could ever constitute "good cause" for extending the period for filing an appeal.[5] Consequently the issue before us is one of law: whether this rule is a correct interpretation of Unemployment Insurance Code section 1328.[6]

We begin by examining section 1328 in the light of the overriding legislative objective of establishing "a system of unemployment insurance providing benefits for persons unemployed through no fault of their own, and to reduce involuntary unemployment and the suffering caused thereby to a minimum." (Unemp. Ins. Code, § 100.) As pointed out by Justice Kingsley: "We deal here with the relations between an executive agency specifically and solely charged with the administration of a special and relatively technical law and one of the intended beneficiaries of that law. The law deals with a class of persons for whom the Legislature has expressed a particular concern and with a class of persons who are highly unlikely to be skilled either in law or in semantics and, thus, particularly dependent on the administrative agency to help them in securing the benefits that the

[5]The appeals board states that "The reason offered in this case [for the late filing] was that the claimant's attorney or an employee of the attorney was negligent in recording the appeal date on the attorney's calendar or file. The claimant, of couse, must assume the responsibility for this negligence or its consequences. We have in similar situations consistently held that such an explanation does not constitute a substantial reason that affords a legal excuse for the untimely filing of an appeal."

The superior court rendered no findings of fact; its ruling rests on what it described as a "well established administrative interpretation that 'good cause' . . . means delay caused by the department's fault, or at least by fault on the part of someone other than [claimant] or his agents."

Observing that whether good cause is shown for relief from an appeal deadline depends upon the factual circumstances of each case (see *Waters* v. *Superior Court* (1962) 58 Cal.2d 885, 893 [27 Cal.Rptr. 153, 377 P.2d 265]; *Cal. Portland Cement Co.* v. *Cal. Unemp. Ins. Appeals Board* (1960) *supra,* 178 Cal.App.2d 263, 272-274), the Attorney General now attempts to frame the issue on appeal as a factual one—whether substantial evidence supports an implied finding of the superior court that petitioner had failed to show good cause. The record, however, demonstrates that neither the superior court nor the appeals board based its decision upon the factual circumstances of petitioner's case; each simply followed an administrative practice of denying relief in all cases in which the delay can be attributed to some act or negligence of the claimant or his agent.

[6]We recognize that the board's decisions represent a settled administrative construction of the statute which must be given great weight. (See *Whitcomb Hotel, Inc.* v. *Cal. Emp. Com.* (1944) 24 Cal.2d 753, 756 [151 P.2d 233, 155 A.L.R. 405].) It is, however, "the duty of this court, when : . . a question of law is properly presented, to state the true meaning of the statute . . . even though this requires the overthrow of an earlier erroneous administrative construction." (*Bodinson Mfg. Co.* v. *California E. Com.* (1941) 17 Cal.2d 321, 326 [109 P.2d 935].)

law provides." (*Perez* v. *Unemployment Ins. App.. Bd.* (1970) 4 Cal. App.3d 62, 66 [83 Cal.Rptr. 871] (dissenting opn.).)

Recognizing that the direct beneficiaries of this legislation are the unemployed—persons generally lacking both legal training and the funds needed to retain private counsel—the Legislature provided for an informal, nontechnical procedure for adjudicating claims. The initial determination of an applicant's eligibility for benefits is rendered by the claims interviewer, who examines any documents submitted by the applicant or his former employer, and discusses the matter with the applicant in a non-adversarial setting.[7] A party dissatisfied with the determination of the claims interviewer may obtain a hearing before a referee; yet, even in this setting, the basic policy of informality continues. "The Appeals Board and its representatives and referees are not bound by common law or statutory rules of evidence or by technical or formal rules of procedure but may conduct the hearings and appeals in such manner as to ascertain the substantial rights of the parties." (Unemp. Ins. Code, § 1952.) From beginning to end, the emphasis is not upon formality of procedure but upon adjudication on the merits.

The provisions of the Unemployment Insurance Code must be liberally construed to further the legislative objective of reducing the hardship of unemployment. (*California Emp. Com.* v. *Kovacevich* (1946) 27 Cal.2d 546, 549 [165 P.2d 917]; *Flores* v. *Unemployment Ins. Appeals Bd.* (1973) 30 Cal.App.3d 681, 684 [106 Cal.Rptr. 543]; *Cal. Portland Cement Co.* v. *Cal. Unemp. Ins. Appeals Board* (1960) *supra,* 178 Cal. App.2d 263, 270.)[8] To construe the code liberally to benefit the unemployed, and to dispense with the formality in administrative adjudication, does not accord with a draconian rule that the slightest and most excusable inadvertence will deprive a worker of his right to an appeal on the merits.

---

[7] See *California Human Resources Dept.* v. *Java* (1971) 402 U.S. 121, 126-128 [28 L.Ed.2d 666, 670-672, 91 S.Ct. 1347].

[8] In *Cal. Portland Cement Co.* v. *Cal. Unemp. Ins. Appeals Board* (1960) *supra,* 178 Cal.App.2d 263, the court construed the term "good cause" in Unemployment Insurance Code section 1256, which denies benefits to persons who leave work "without good cause." The employer there contended that "good cause" could not encompass reasons personal to the applicant; the court rejected this contention as contrary to the requirement of liberal construction of the act, and declared that " 'Good cause' must be so interpreted that the fundamental purpose of the legislation shall not be destroyed." (178 Cal.App.2d at p. 272.) In view of the statutory objectives, the court concluded, the concept of "good cause" cannot be arbitrarily limited; the board must take account of " 'real circumstances, substantial reasons, objective conditions, palpable forces that operate to produce correlative results, adequate excuses that will bear the test of reason, just grounds for action, and always the element of good faith. . . .' " (178 Cal.App.2d at pp. 272-273, quoting *Bliley Electric Co.* v. *Unemployment Comp. Bd. of Rev.* (1946) 158 Pa.Super. 548 [45 A.2d 898, 903].)

Within the short period of 10 days an applicant without legal training is required to determine the advisability and method of filing an appeal from the ruling of the interviewer. If legal aid is available, it may well take the form of an overburdened and understaffed agency. Under these circumstances, applicants may, through their own excusable inadvertence or that of their representatives, fail to file their appeal within the 10-day limit. (See *Flores* v. *Unemployment Ins. Appeals Bd.* (1973) *supra,* 30 Cal.App.3d 681, 684-685.) In barring such appeals without regard to the shortness of the delay, the absence of prejudice, and the excusability of the error, the board subverts the legislative goal. ·

Our rejection of the board's interpretation of "good cause" in section 1328 finds support in the recent decision of the Court of Appeal in *Flores* v. *Unemployment Ins. Appeals Bd.* (1973) *supra,* 30 Cal.App.3d 681. Flores arranged for a legal aid office in Los Angeles to file his appeal from an adverse ruling by the claims interviewer; because of a secretarial backlog the office filed the appeal three days late. Pursuant to its view that no mistake by an applicant or his agent can constitute "good cause" to extend the 10-day limit, the board rejected the appeal. The superior court found the board had abused its discretion. The Court of Appeal affirmed, stating that "[t]he 10-day limitation for filing appeals is doubtless intended to expedite the disposition of claims, but no purpose is served by imposing forfeiture where the delay is minimal and there is no prejudice to others. . . . Considering the explanation given for the delay, which was found to be true, and the amount of time involved, the superior court was fully justified in concluding that the referee and the respondent appeals board had abused their discretion in refusing to hear the claimant's appeal on the merits." (30 Cal.App.3d at pp. 684-685.)[9]

We summarize our position. We find that the language and purpose of the Unemployment Insurance Code, and the judicial construction of its provisions, present a consistent picture—a remedial statute, liberally construed to carry out the state policy of aiding the unemployed worker, administered informally without resort to technicalities that might deprive the

---

[9]Three decisions denying relief under section 1328, cited by the Attorney General, are not helpful in construing that section. In *Fermin* v. *Department of Employment* (1963) 214 Cal.App.2d 586 [29 Cal.Rptr. 642], the applicant delayed three months in filing his notice of appeal and offered no excuse for the delay. In *Perez* v. *Unemployment Ins. App. Bd.* (1970) *supra,* 4 Cal.App.3d 62, the delay was over five months; the excuse that the applicant initially believed the decision against him was correct. The opinion in *Hicks* v. *Sheffield* (1972) 23 Cal.App.3d 441 [100 Cal.Rptr. 274] states neither the length of the delay nor the explanation, if any, offered by the applicant. Each of these decisions merely affirm trial court findings of lack of good cause for a late appeal; none construe section 1328 nor explain the nature of "good cause" essential to extend the time for appeal under that statute.

unsophisticated applicant of his right to benefits. In the face of this analysis we perceive no justification for a construction of section 1328 which limits "good cause" for relief to exclude cases in which delay was attributable to excusable error of petitioner's counsel.

On the undisputed facts of this case, we find not only that the trial court erred in following the board's restrictive construction of section 1328, but that, as a matter of law petitioner has shown "good cause" for relief under that section. The delay in the case at hand was only three days. Neither the board nor petitioner's former employer claims prejudice arising from this insignificant tardiness. In fact, the referee, without objection from the employer, heard petitioner's appeal on the merits; if he had decided the issue at that time he would have saved considerable time and expense to all concerned. Finally, the calendaring error of petitioner's overburdened counsel constitutes the sort of error we have often found excusable; under the circumstances of this case, and in view of the remedial objectives and informal procedures of the Unemployment Insurance Code, we should not magnify that mistake to bar petitioner's right to a hearing on the merits.

In light of the above analysis we see no point in returning this case to the superior court for a hearing on whether petitioner has shown "good cause" for his late filing of the appeal; that hearing could have but one reasonable outcome, a finding of good cause and the issuance of mandate directing the board to process his appeal on the merits.

The judgment of the superior court is reversed, and the cause remanded with directions to issue mandate to compel respondent board to hear petitioner's appeal.

Wright, C. J., McComb, J., Mosk, J., Burke, J., Sullivan, J., and Devine, J.,* concurred.

---

*Assigned by the Chairman of Judicial Council.