[Civ. No. 46373. Second Dist., Div. Five. July 19, 1976.]

DONNA M. SLATTERY, Plaintiff and Appellant, v.
UNEMPLOYMENT INSURANCE APPEALS BOARD,
Defendant and Respondent.

**COUNSEL**

Cary S. Reisman and Kenyon F. Dobberteen for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Edward M. Belasco, James E. Ryan and Anne S. Pressman, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

KAUS, P. J.—Petitioner Donna M. Slattery ("claimant") appeals from a trial court judgment in favor of respondent California Unemployment Insurance Appeals Board ("Board") denying her petition for writ of mandate to compel the Board to set aside its decision denying her unemployment insurance benefits.

### FACTS

Claimant, who at the time was working in Los Angeles as a switchboard operator, was fired by her employer after she allegedly exceeded her allotted 30-minute lunch period. Claimant applied for and was awarded unemployment insurance benefits. The employer appealed the department's determination of eligibility to the Board.

At the time of the hearing, claimant was living in Eureka. In accordance with Board regulations—which we discuss below—simultaneous hearings were scheduled on December 3 for the claimant in Eureka and for the employer in Los Angeles. Claimant received a copy of each notice of hearing. The employer's hearing in Los Angeles was later rescheduled from December 3 to December 4. Different referees presided. Claimant was the only witness at the hearing in Eureka. A company vice-president and an executive secretary of claimant's former employer testified in Los Angeles. Claimant did not appear at the Los Angeles hearing. In accordance with Board practice, the referee who heard the appellant's—in this case, the employer's—side of the case made the decision. Claimant represented herself in all proceedings before the Board.

The referee found that the employer had "discharged the claimant for taking a long lunch break," that such conduct constituted misconduct, and that claimant was therefore disqualified for unemployment insurance benefits. On claimant's appeal, the Board affirmed the decision of the referee. This writ petition followed.

On appeal from the trial court's judgment denying her petition, claimant makes three basic contentions: (1) She was not given notice of the rescheduled Los Angeles hearing, (2) the Board did not inform claimant of authorized procedures which would have permitted her to examine opposing witnesses and rebut unfavorable evidence at the Los Angeles hearing; and (3) the Board's finding that claimant was

discharged for "misconduct" is not supported by the record. (Unemp. Ins. Code, § 1256.)

Although on the record before us claimant appears to have a strong case that she was not given any notice of the rescheduled Los Angeles hearing, we are not satisfied that the record is complete on that point.[1] Since we hold that plaintiff's second point has merit, we need not decide the question of notice. The issue of the sufficiency of the evidence to justify denial of benefits should be redecided by the Board, after granting claimant the adversary hearing which its own rules and practices authorize and which claimant did not receive. We do not imply what a proper ruling would be.

## DISCUSSION

The code authorizes the Board to adopt rules governing claims and appeals. (Unemp. Ins. Code, §§ 411, 1951.) The code also provides that the Board, its representatives and referees are not bound by "technical or formal rules of procedure but may conduct the hearings and appeals in such manner as to ascertain the substantial rights of the parties." (§ 1952; see also, *Gibson* v. *Unemployment Ins. Appeals Bd.,* 9 Cal.3d 494, 499-500 [108 Cal.Rptr. 1, 509 P.2d 945].) The Board has adopted a set of regulations to govern unemployment insurance claims and hearings. (Cal. Admin. Code, tit. 22, §§ 5000-5168.)[2] Relevant to this case are two sections of the regulations.

Section 5038, subdivision (b), provides: "Each party shall have these rights: to call and examine parties and witnesses; . . . to question opposing witnesses and parties on any matter relevant to the issues . . . ; to impeach any witness . . . ; and to rebut the evidence against him."

Section 5041 provides for the scheduling of hearings. Where "because of the distance involved . . . , it is impracticable for parties . . . to appear at the same place of hearing, a hearing for each party will be scheduled

---

[1] Both parties received notices, apparently mailed on November 19, 1973, advising them that the Los Angeles hearing would take place on December 3 at 9 a.m. and the Eureka hearing on the same day at 1 p.m. In fact the Los Angeles hearing took place on December 4 at 1:45 p.m. The only document indicating that notice of the change was given to anyone is a copy of a document marked "FOR EMPLOYER ONLY" mailed November 27, 1973. Nothing indicates that this notice was mailed to claimant. Under the Board's own rules, moreover, at least 10 days' written notice was required. (Cal. Admin. Code, tit. 22, § 5029.)

[2] All references to regulations are to title 22 of the California Administrative Code.

. . . as nearly simultaneously as possible." (§ 5041, subd. (c).) If simultaneous hearings are scheduled, "parties may submit questions to the referee to be asked of the opposing party, . . . in writing . . . prior to the hearing." (§ 5041, subd. (d).)[3]

More importantly, though not mentioned in the formally promulgated rules, Board procedure provides for a conference telephone hearing—an imaginative attempt to solve the due process problems which inhere in the simultaneous hearing concept. (See Form DE 6400; Cal. Administrative Agency Practice (Cont.Ed.Bar Supp.) § 7.29, p. 46.)

Recognizing its obligations to the generally unskilled and unrepresented litigants that appear before it (*Gibson* v. *Unemployment Ins. Appeals Bd., supra,* 9 Cal.3d 494, 498-499), the reverse side of the Board's notice of hearing form contains much information, presumably useful to the average claimant. Unfortunately, the document not only ignores the simultaneous hearing procedure and the Board's practices—written questions to be asked by the referee and the telephone hearing—designed to interrelate the two hearings, but positively implies that no such practices exist. All that the claimant is told about the hearing is the matter set forth below.[4] This information would be at best, puzzling to a person such as claimant who, as far as she knows, is to be the only witness at the hearing she will attend. Whom is she to question? How is she to "give evidence in explanation or rebuttal" if she does not know what evidence has been offered by the other side, or—as in this case—what evidence will be offered by the other side the next day?

■ "The opportunity to be heard must be tailored to the capacities and circumstances of those who are to be heard." (*Goldberg* v. *Kelly* (1970) 397 U.S. 254, 268-269 [25 L.Ed.2d 287, 299, 90 S.Ct. 1011].) We do not doubt that the regulation providing for simultaneous hearings coupled with the policy that permits conference telephone hearings was designed to do just that, consistent with the rule that the Unemployment

---

[3] The Board usually allows the parties "at least three weeks' notice to permit preparation and submission of questions to be asked at the other hearing." (Cal. Administrative Agency Practice (Cont.Ed.Bar) § 7.29, p. 340.) This policy could not have been followed in this case. (See fn. 2.)

[4] "THE HEARING—Each party will have an opportunity to testify and to present written evidence, *to question witnesses, and to give evidence in explanation or rebuttal.* All testimony is under oath or affirmation. A knowledge of the technical rules of evidence or procedure is not necessary. [¶] You should come to the hearing with your witnesses, if any, and bring to the hearing any written evidence, such as affidavits, letters, payroll and personnel records, union contract, and physician's statements re nature/extent of disability if health is an issue." (Italics added.)

Insurance Code is to be "administered informally without resort to technicalities that might deprive the unsophisticated applicant of his right to benefits." (*Gibson* v. *Unemployment Ins. Appeals Bd., supra,* 9 Cal.3d 494, 500-501.)

■ Thus, the problem in this case is not that the Board lacked a meaningful procedure which would have permitted claimant to participate—albeit long distance—in the employer's side of the hearing process. Rather, it was the Board's failure to advise this unrepresented lay claimant that such a procedure existed. The result was predictable: in the language of the courtroom, the matter was decided by the Los Angeles referee on the basis of a pretrial deposition given by claimant, and a "live" evidentiary hearing at which only the employer's unimpeached and uncontradicted witnesses testified.

The Board contends, however, that there is no unfairness or denial of effective due process in failing to inform claimant of the possibility of a conference telephone hearing, because at the bottom of the reverse side of the notice of hearing form, the claimant is told: "For additional information, explanation or assistance, contact the referee office."

This argument rests on conjecture, anchored in speculation. What "additional information, explanation, or assistance," claimant would have received by contacting the referee's office no one will ever know. In fact, the record strongly suggests that no relevant information would have been furnished. When the Eureka hearing started, the referee who presided there asked claimant whether she had any objection to certain documents being offered at the Los Angeles hearing. She said that she had none but "there are points that I don't agree with." That certainly would have been an excellent time for the referee to tell her that there was a way of expressing her disagreement to the Los Angeles referee who would make the decision. Nothing of the sort happened. The referee merely said that the "parts that you don't agree with" would be discussed in Eureka.

In *Gibson* v. *Unemployment Ins. Appeals Bd., supra,* 9 Cal.3d 494, 498-499, the Supreme Court said: "As pointed out by Justice Kingsley: 'We deal here with the relations between an executive agency specifically and solely charged with the administration of a special and relatively technical law and one of the intended beneficiaries of that law. The law

deals with a class of persons for whom the Legislature has expressed a particular concern and with a class of persons who are highly unlikely to be skilled either in law or in semantics and, thus, particularly dependent on the administrative agency to help them in securing the benefits that the law provides.' [Citation.]"

The Board has devised a pragmatic solution, made possible by modern technology, which attempts to reconcile the problem of geographically separated adversaries with the core elements of a fair adversary hearing: the opportunity to cross-examine adverse witnesses and to rebut or explain unfavorable evidence. It does not comport with the spirit of the law with which we deal—as explained in *Gibson*—to permit an unrepresented lay litigant to proceed as if those basic rights did not exist.[5]

---

[5]There is no question that on this record cross-examination of the employer's witnesses and an opportunity to explain or rebut their testimony would have been of great practical value to claimant.

The key question was whether she had overstayed her 30-minute lunch break, thereby "taking money for nothing," as well as disrupting the routine of the office. A subsidiary issue was whether she had been tardy in spite of previous warnings. Both sides agree that at the beginning of her lunch break, claimant clocked out at 1:18 p.m. and clocked back in at 1:42 p.m. She then spent some time in the company lunch room eating food she had bought off the premises. No one will ever know, however, how long she had been gone, since the employer's time clock only registers 6-minute intervals. Therefore, she could have been off the premises as much as 29 minutes—1:18 p.m. to 1:47 p.m.—or, as little as 19 minutes—1:23 p.m. to 1:42 p.m. According to claimant's testimony, she returned to her post 10 minutes after she clocked in, or at about 1:50 p.m. Thus, resolving all doubts in her favor, she was not late at all. She admitted that about three months before the incident she had been late a couple of times and had been admonished.

The executive secretary, who testified at the Los Angeles hearing, personally observed claimant in the lunch room for 20 minutes after she returned to the premises. One Mr. Ketchum, a vice-president who did not testify, told the secretary that claimant had been in the lunch room for as much as 45 minutes. Ketchum ordered her discharge because he had "no doubt" that this sort of thing had happened before. There had been recent complaints from the relief switchboard operator that either claimant or other operators had extended their lunch periods.

When claimant was informed of her discharge the following workday, she claimed that she had not been late and an informal investigation was made. At claimant's Eureka hearing, she testified that a Mr. Botts, her immediate supervisor, took her side. Mr. Botts was not a witness at the Los Angeles hearing. Significantly, in claimant's appeal to the Board, the failure to hear from Mr. Botts was claimant's chief complaint.

Obviously, cross-examination, explanation, or rebuttal could have cast an entirely different light on the evidence offered at the Los Angeles hearing. The secretary's 20-minute estimate was not questioned. Ketchum, who allegedly observed a 45-minute stay in the lunch room, did not testify. The very important question whether the relief operator's complaints about previous tardiness were ever called to claimant's attention was never even touched on. Mr. Botts—claimant's advocate among her superiors—was never called.

Because the mere fact that claimant may have been guilty of conduct justifying her discharge will not suffice to deprive her of unemployment benefits unless the conduct is "willful, wanton or equally culpable" (e.g., *Jacobs* v. *California Unemployment Ins.*

The judgment is reversed.

Stephens, J., and Hastings, J., concurred.

---

*Appeals .Bd.,* 25 Cal.App.3d 1035, 1037 [102 Cal.Rptr. 364]), an opportunity for an adversary hearing was manifestly more than an abstract right.