[No. G019819. Fourth Dist., Div. Three. Mar. 3, 1999.]

C & C PARTNERS, LTD., et al., Plaintiffs and Respondents, v.
DEPARTMENT OF INDUSTRIAL RELATIONS, DIVISION OF LABOR
STANDARDS ENFORCEMENT, Defendant and Appellant.

604

**COUNSEL**

Barbara J. Ferguson for Defendant and Appellant.

Gray, York, Duffy & Rattet, Nordman, Cormany, Hair & Compton, Louis A. Cappadona; and Melvin S. Feldman for Plaintiffs and Respondents.

**OPINION**

**SONENSHINE, Acting P. J.**—The Division of Labor Standards Enforcement of California's Department of Industrial Relations (State) appeals from

a judgment and writ of mandate issued by the superior court. The court set aside a citation issued by the State to C & C Partners, Ltd., and C & C Traders, Inc. (C & C).[1] It further ordered the State to return a $20,000 civil penalty C & C paid and a $5,000 surety bond C & C posted. In this case of first impression, we decide: (1) when a garment manufacturer operates without a registration certificate, all of its employees are affected and a penalty of $100 per employee for a first violation is proper under Labor Code section 2678,[2] and (2) a garment manufacturer who has been cited and penalized under *any* of the garment manufacturing statutes within the preceding three years must post a bond in order to secure a registration certificate.

## I

On March 2, 1995, C & C, a garment manufacturer and distributor, applied for a garment manufacturer's registration certificate. While the application was pending, and as part of its investigation of another business, State inspectors discovered C & C was operating without a registration certificate. The State cited C & C pursuant to section 2678, subdivision (a)(2), fined it $20,000, and ordered it to post a $5,000 surety bond pursuant to section 2675, subdivision (a)(3).

Under protest, C & C paid the penalty and posted the bond. The section 2681 administrative hearing that followed proved fruitless; the hearing officer affirmed the assessment.[3]

C & C fared better with its petition for writ of mandate under section 2681, subdivision (b) and Code of Civil Procedure section 1094.5. Granting relief, the trial court found: (1) the admission of the State inspector's telephone testimony violated C & C's due process rights; (2) the State improperly assessed the penalty because C & C's failure to register did not affect C & C's employees; and (3) the State erred in imposing a bond because none of C & C's employees were damaged. Judgment was entered accordingly. The peremptory writ of mandate ordered the State to set aside the hearing officer's findings and order, the citation, the penalty and the bond, and return the $20,000 penalty and the $5,000 bond, with interest. The State appeals.

---

[1] C & C Partners, Ltd., and C & C Traders, Inc., are corporations doing business as Sunset Traders.

[2] All further statutory references are to the Labor Code unless otherwise indicated.

[3] C & C requested a review of the penalty assessment and the bond, although section 2681 permits review of only the penalty assessment. Neither the hearing officer's findings nor order addressed the bond, but in its answer to the writ petition the State conceded the hearing officer affirmed the penalty assessment *and* the bond. The trial court also addressed the bond.

## II

### PENALTY

█ Section 2678 provides in pertinent part, "(a) A penalty, as provided in subdivision (c), may be imposed against any person for . . . [¶] . . . [¶] (2) Failure to comply with the registration requirements of this part [§ 2670 et seq.]. [¶] . . . [¶] (c) The penalties shall be a civil penalty of one hundred dollars ($100) for each *affected* employee for the initial violation . . . ." (Italics added.)

C & C concedes it operated without a registration certificate. It argues it was not subject to a fine because none of its employees were affected. The State argues all employees *are presumed* to be affected when an employer fails to register. This interpretation "is entitled to great weight, [being neither] clearly erroneous [n]or unauthorized. [Citation.]" (*California Real Estate Loans, Inc.* v. *Wallace* (1993) 18 Cal.App.4th 1575, 1582 [23 Cal.Rptr.2d 462].) For reasons we now explain, the State is correct.

### Overall Intent of Legislative Scheme

█ "[O]ur primary task in construing a statute is to determine the Legislature's intent." (*Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406].) We look first to the words themselves. (*California Real Estate Loans, Inc.,* v. *Wallace, supra,* 18 Cal.App.4th at p. 1582.) █ While the Legislature did not define the term "affected employee," it did specify its general intent with respect to the overall statutory scheme. "It is the intent of the Legislature, in enacting [section 2670 et seq.], to establish a system of registration, penalties, confiscation, bonding requirements, and misdemeanors for the imposition of prompt and effective criminal and civil sanctions against violations of . . . any of the laws as set forth herein and regulations of this state applicable to the employment of workers in the garment industry. . . . This part shall be deemed an exercise of the police power of the state for the protection of the public welfare, prosperity, health, safety, and peace of the people of the State of California." (§ 2670.) In short, the Legislature's intent is to protect the "public's welfare, prosperity, health, safety[] and peace" (*ibid.*) by establishing a body of garment industry laws and regulations, and providing prompt and effective means to enforce the same.

### Registration Requirements

In furtherance of that intent, the registration requirements were designed "to assist the Labor Commissioner in enforcing labor laws in the garment

industry." (Sen. Com. on Industrial Relations, Analysis of Sen. Bill No. 380 (1983-1984 Reg. Sess.) as introduced Feb. 14, 1980.) The first step in the enforcement scheme is to require registration[4] as a condition precedent to operation.

### Legislative History

The significance of the registration requirements in the enforcement scheme is shown by the statute's legislative history. Section 2678, as originally enacted in 1980, provided for a $50 penalty for first time violations. However, "[e]ven with the new registration system and rigorous enforcement efforts by the Labor Commissioner, compliance by employers [was] still dismally poor." (Assem. Office of Research, 3d reading analysis of Sen. Bill No. 380 (1983-1984 Reg. Sess.) as amended Aug. 20, 1984.) Accordingly, the Legislature amended the statutes in 1984 (Stats. 1984, ch. 1564, §§ 1-10, pp. 5521-5525) to "stiffen penalties" and "increase registration fees to produce additional revenue for enforcement purposes." (Assem. Office of Research, 3d reading analysis of Sen. Bill No. 380, *supra*, as amended Aug. 20, 1984.)

### Affected Employees

With that background in mind, we now determine whether C & C's employees were affected by the company's failure to register. ▮ In so doing, we construe the statute in a reasonable and commonsense manner consistent with the legislative intent. (*City of Poway* v. *City of San Diego* (1991) 229 Cal.App.3d 847, 858 [280 Cal.Rptr. 368].) The interpretation must be " 'practical rather than technical in nature, . . . [resulting] in wise policy rather than mischief or absurdity. . . .' " (*Ibid.*) Moreover, "[a] statute should be so construed as to give a sensible and intelligent meaning to every part . . . ." (*Matter of Zany* (1912) 20 Cal.App. 360, 368 [129 P. 295].)

▮ C & C's argument implies either (1) no employees are ever affected by an employer's failure to register, or (2) C & C's employees were

---

[4]Before receiving a registration certificate, the applicant is required to provide: (a) a sworn application, including (i) information about satisfactory employer character, competency and responsibility, (ii) information about the proposed methods of operation, and (iii) the names and addresses of all financially interested parties, including a description of their respective interests; (b) evidence of workers' compensation insurance; (c) a registration fee; (d) evidence of knowledge of applicable laws and regulations; (e) a statement that the applicant shall (i) comply with applicable health and safety laws and regulations, (ii) ensure all employees are made aware of such laws and regulations and are instructed in the implementation of certain safety plans, (iii) ensure all employees are instructed in the use of portable fire extinguishers, and (iv) post specified safety plans in a prominent location in the workplace; and, (f) in certain cases, a bond.

unaffected. Neither interpretation makes sense or is consistent with the legislative intent.

Accepting its first argument would render the section 2678 penalty provision inapt to *all* registration violations. The State could never levy the very penalties the statute prescribes. In essence, it would make section 2678, subdivision (a)(2) meaningless.

C & C's second point is equally unavailing. By alleging none of its employees were affected, C & C forces the State to establish individual harm. This interpretation would so burden the State's human resources, it is unlikely the State would ever again attempt to impose registration violation penalties. Such a result flies in the face of the legislative intent to provide the State with "prompt and effective" enforcement methods.

*Proposed Statutory Alteration*

None of C & C's additional arguments are convincing. It maintains the State should not have assessed a penalty while the registration application was pending.[5] C & C would have us add an exception to the registration requirements. This we cannot do. ■ The statute is very clear, and "[w]e are not authorized to insert qualifying provisions and exceptions which have not been included by the Legislature, and may not rewrite a statute to conform to an intention which does not appear in the statutory language. [Citation.]" (*California Real Estate Loans, Inc.,* v. *Wallace, supra,* 18 Cal.App.4th at p. 1582.)

■ C & C further maintains a section 2678 penalty should apply, if at all, only to nonexempt employees. But neither section 2678 nor California Code of Regulations, title 8, section 13639, which defines the penalties, makes any such distinction. ■ " 'Where the words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.' " (*Trope* v. *Katz* (1995) 11 Cal.4th 274, 280 [45 Cal.Rptr.2d 241, 902 P.2d 259].)

III

THE BOND

■ A garment manufacturer, who has been cited and penalized under any of the garment manufacturing statutes (§ 2670 et seq.) within the

---

[5]C & C also argues the statutes are penal and should be narrowly construed. Perhaps, but as we explain above, the result is the same.

preceding three years, may nevertheless secure a registration certificate, but only after posting a bond. (§ 2675, subd. (a)(3).) The amount and form of the bond are within the Labor Commissioner's discretion, but the amount may not exceed $5,000 and must be sufficient and adequate "to insure future compliance." (*Ibid.*) If the garment manufacturer thereafter violates any wage and benefits provisions, the proceeds go to the damaged employees.[6] (*Ibid.*)

C & C concedes it violated the statute by operating without a registration certificate. It nevertheless maintains it should not be required to post a bond because one is required only for wage and benefit violations.[7] In furtherance of this argument, C & C avers the Legislature intended to provide decent and humane working conditions, not to penalize employers for inadvertent violations of registration requirements.[8]

C & C is wrong. The statute mandates that a bond be imposed for *all* manufacturers who have violated the statute within three years. As we just explained, we cannot rewrite the statute. (*Trope* v. *Katz, supra,* 11 Cal.4th at p. 280.)

The statute's legislative history also defeats C & C's argument. Senate Bill No. 545 originally required *every registrant* to deposit either a $5,000 bond or 30 days' payroll, whichever was greater.[9] (Sen. Com. on Business & Professions, Analysis of Sen. Bill No. 545 (1979-1980 Reg. Sess.) as introduced Apr. 25, 1979.) After receiving a significant number of complaints, the Legislature enacted section 2675 without a bond requirement for registration. (Stats. 1980, ch. 633, § 1, pp. 1732-1733.)

This turned out to be *too* lenient. Garment industry abuses were still rampant. (Assem. Office of Research, 3d reading analysis of Sen. Bill No. 380, *supra,* as amended Aug. 20, 1984.) Because of this, early versions of

---

[6]The bond also benefits employees damaged when two or more employers engage in a business practice which causes or is likely to cause a violation of the section 2675 et seq. registration provisions. (§ 2675, subd. (a)(3).)

[7]C & C also argues a bond is not required because none of its employees were damaged. However, section 2675, subdivision (a)(3) does not require a showing of past damage before a bond is required.

[8]C & C contends it should be excused from posting a bond because "the lack of registration here was the result of the [State's] failure to timely issue it." Not quite. C & C was responsible for obtaining a registration certificate *before* it engaged in garment manufacturing. Section 2675 contains no exception for violations occurring while registration applications are pending.

[9]Other Labor Code provisions require bonds for *all* persons entering certain fields. (See e.g., §§ 1684 [requiring bond for farm labor contractors] & 1700.15 [requiring bond for talent agents].)

Senate Bill No. 380 required *every applicant* to post a $5,000 bond. (Assem. Amend. to Sen. Bill No. 380 (1983-1984 Reg. Sess.) Apr. 9, 1984; Cal. Dept. of Industrial Relations, Analysis of Sen. Bill No. 380 (1983-1984 Reg. Sess.) as amended June 7, 1984; Legislative Analyst, Analysis of Sen. Bill No. 380 (1983-1984 Reg. Sess.) as amended June 7, 1984.) However, this requirement was rejected once again. The final result was section 2675, as amended in 1984 (Stats. 1984, ch. 1564, § 2, pp. 5522-5523), requiring applicants who violate *any* garment manufacturing statutes to post a bond not to exceed $5,000. That provision remains in section 2675, subdivision (a)(3), as currently in effect.[10]

## IV

### ADMINISTRATIVE HEARING

█ The State, unable to produce its inspector at the administrative hearing, asked if he could testify by telephone. C & C's attorney objected. The State offered to continue the hearing until a date the inspector could be present, but conceded the hearing would then take place after the 30-day deadline specified in section 2681. The hearing officer admitted the telephonic testimony, and the hearing proceeded.

The State's inspector testified he determined the $20,000 assessment by applying $100 per each of C & C's 200 employees. Referring to his notes, he offered to provide the employee classifications. C & C's attorney objected, saying the inspector should be present so he could examine the notes and cross-examine him. The inspector explained his notes were copies of the penalty assessment order and the basic inspection report. Cross-examination continued. C & C's attorney asked the inspector how the 200 employees were affected by C & C's lack of registration. The inspector reiterated he simply fined C & C $100 per employee.

The trial court found the hearing officer's admittance of telephonic testimony violated C & C's due process rights. The court also concluded C & C was prejudiced by its inability to cross-examine the inspector concerning the notes.

---

[10]Moreover, as the State asserted at oral argument, section 2675.2 permits the Labor Commissioner to issue a temporary extension of an existing registration certificate under specified circumstances. If the Legislature intended the Labor Commissioner to have leeway in the issuance of first time registration certificates, it could have so provided. But section 2675, subdivision (a) contains mandatory requirements. The Labor Commissioner is not at liberty to issue a registration certificate unless all of the requirements are satisfied, including the posting of a bond by a violator.

On appeal, the State contends the trial court erred because C & C was able to cross-examine the inspector. C & C does not disagree. Indeed, it concedes, "Both parties submitted all of their evidence and the hearing was closed. A complete record has been made and reviewed by the trial court. There was no [State] error in the conduct of the hearing, but in the *results* reached." (Original italics.) It also states: "[The inspector] was permitted to testify by telephone over the initial objections of C & C. However, C & C counsel subsequently cross-examined him during the same telephone testimony and agreed to continue with the hearing and submitted all C & C evidence."

We find no due process violation. Beyond C & C's concession, we note California Code of Regulations, title 8, section 13651 provides section 2681 hearings need not be conducted according to the technical rules relating to evidence and witnesses. Moreover, administrative hearings are not necessarily infirm because of telephonic testimony. *Slattery* v. *Unemployment Ins. Appeals Bd.* (1976) 60 Cal.App.3d 245 [131 Cal.Rptr. 422] is instructive. There the court criticized the California Unemployment Insurance Appeals Board for failing to notify one of the parties about the opportunity of having a telephone conference hearing. The court described such hearings as "a pragmatic solution, made possible by modern technology, which attempts to reconcile the problem of geographically separated adversaries with the core elements of a fair adversary hearing: the opportunity to cross-examine adverse witnesses and to rebut or explain unfavorable evidence." (*Id.* at p. 251.)

## V

### CONCLUSION

The judgment is reversed. The matter is remanded to the trial court with directions to reinstate the findings and order of the hearing officer, the citation, the penalty, and the bond. The State shall recover its costs on appeal.

Rylaarsdam, J., and Bedsworth, J., concurred.