[Civ. No. 33958. Second Dist., Div. Four. Feb. 3, 1970.]

ANTONIO PEREZ, Plaintiff and Appellant, v.
UNEMPLOYMENT INSURANCE APPEALS BOARD,
Defendant and Respondent;
DEPARTMENT OF UNEMPLOYMENT, Real Party in Interest and Respondent.

**COUNSEL**

Arthur Stahl for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, and Anthony M. Summers, Deputy Attorney General, for Defendant and Respondent and for Real Party in Interest and Respondent.

**OPINION**

**FILES, P. J.**—On January 5, 1967, the Director of Employment sent a notice to petitioner informing him he was not eligible to receive benefits for specified periods. The notice of determination stated, among other things:

"Reason for decision:

"You state you failed to report at your local as required—since 11-20-6.

"Since you are a member of a Union that controls job dispatching—you

are required to meet the Union requirements to be available for referrals for work.

"When you claimed benefits for the weeks involved you stated you looked for work—which means you reported to your Union. You have made a false statement about a material fact—and for which benefits were paid improperly—False statement accessed [*sic*]."

At the top of the notice of determination was this statement: "THIS DECISION IS FINAL UNLESS AN APPEAL IS FILED ON OR BEFORE 1-16-7"

On the reverse side of that document appeared this language: "INFORMATION RELATING TO APPEALS

"If you believe this determination to be contrary to law or the facts, you may file an appeal to a referee within ten (10) days from the date of mailing or service of this notice. An appeal may be filed on forms obtainable at any local office or by a letter addressed to the local office from which you received this notice."

Accompanying this notice was a "notice of overpayment," at the top of which was the statement in capitals "This decision is final unless an appeal is filed on or before 1-16-67." The notice said:

"Explanation:

"You were improperly paid benefits for the above weeks because you did not report to the union during the above weeks.

"Amount of Overpayment: $325.00

"If you believe that this charge is not proper you may appeal to a referee. An appeal must be in writing and must be filed within ten days from the date of mailing or service of this notice. This office will assist you in preparing an appeal if you desire."

Unemployment Insurance Code section 1328 provides: "The claimant and any employer who prior to the determination has submitted any facts or given any notice pursuant to Section 1327 and authorized regulations shall be promptly notified of the determination and the reasons therefor and may appeal therefrom to a referee within 10 days from mailing or personal service of notice of the determination. The 10-day period may be extended for good cause."

Unemployment Insurance Code section 1377 provides: "Within 10 days from the date of mailing or serving of the notice of overpayment, the person affected may file an appeal to a referee. . . . The 10-day period for an appeal to the referee or to the appeals board may be extended for good cause."

Petitioner did not file any notice of appeal until June 4, 1967. A hearing was held before a referee, where petitioner was represented by counsel. The issue was whether the appeal was timely. When petitioner was asked by his counsel why he did not appeal sooner he answered "Well, I thought I was guilty . . . Of not reporting to the union."

The referee found that no good cause had been shown for a late appeal and dismissed it as untimely. Petitioner then appealed to the California Unemployment Insurance Appeals Board, which affirmed the decision of the referee.

Petitioner then filed this proceeding in the superior court, by a petition for writ of mandate under Code of Civil Procedure section 1094.5 to review that decision. The superior court heard the case upon the administrative record and concluded that petitioner had failed to show good cause for the late filing of his appeal. Judgment was entered against petitioner, from which he has appealed.

■ Petitioner's sole contention here is that he was misled by the notice of determination and notice of overpayment. His position is that it was true he did not report to his union, but he did look for work in other ways and should not have been disqualified. He asserts the director's notices to him caused him to think that the decision was correct and thereby induced him not to appeal. In effect he is saying he thought the decision was correct when he first heard of it, but he changed his mind almost five months later when he concluded that the department had made an error of law.

Unemployment Insurance Code section 1328 requires that when the eligibility of a claimant is determined, the claimant must be "notified of the determination and the reasons therefor." Section 1376 requires that when the Director of Employment determines the amount of the overpayment he "shall notify the liable person of the basis of the overpayment determination." Petitioner was told he had 10 days within which to appeal if he thought the decision was "contrary to law or the facts." Thus he was informed than even though he agreed with the department's statement of the facts, he was entitled to appeal if he believed that the law had not been applied correctly.

Both the administrative tribunal and the superior court have found that petitioner failed to show good cause for a late appeal. To the extent that the issue is factual, or subject to the discretion of the trier of the facts, it has been resolved against petitioner. To reverse the judgment would require this court to hold that, as a matter of law, the petitioner's good faith belief that the decision was correct extended the time for appeal until he was advised to the contrary.

We cannot say that, as a matter of law, this was "good cause" for a late appeal.

The judgment is affirmed.

Dunn, J., concurred.

**KINGSLEY, J.**—I dissent.

We deal here with the relations between an executive agency specifically and solely charged with the administration of a special and relatively technical law and one of the intended beneficiaries of that law. The law deals with a class of persons for whom the Legislature has expressed a particular concern[1] and with a class of persons who are highly unlikely to be skilled either in law or in semantics and, thus, particularly dependent on the administrative agency to help them in securing the benefits that the law provides.[2]

Petitioner has been deprived of a hearing on his claim by reason of the formalistic application of a rule which, so far as I can discover, has neither statutory nor administrative sanction.[3] The official who first dealt with

[1]Section 100 of the Unemployment Insurance Code reads as follows:
"*Public policy.* As a guide to the interpretation and application of this division the public policy of this State is declared as follows:
"Experience has shown that large numbers of the population of California do not enjoy permanent employment by reason of which their purchasing power is unstable. This is detrimental to the interests of the people of California as a whole.
"The benefit to all persons resulting from public and private enterprise is realized in the final consumption of goods and services. It is contrary to public policy to permit the supply of consumption goods and services at prices which do not provide against that harm to the population consequent upon periods of unemployment of those who contribute to the production and distribution of such goods and services.
"Experience has shown that private charity and local relief cannot alone prevent the effects of unemployment. Experience has shown that if the State awaits the coming of excessive unemployment it can neither create immediately the organization necessary to orderly, economical ·and effective relief nor bear the financial burden of relief without disrupting its whole system of ordinary revenues and without jeopardizing its credit.
"The Legislature therefore declares that in its considered judgment the public good and the general welfare of the citizens of ·the State require the enactment of this measure under the police power of the State, for the compulsory setting aside of funds to be used for a system of unemployment insurance providing benefits for persons unemployed through no fault of their own, and to reduce involuntary unemployment and the suffering caused thereby to a minimum.
"It is the intent of the Legislature that unemployed persons claiming unemployment insurance benefits shall be required to make all reasonable effort to secure employment on their own behalf."

[2]Compare the following language from *Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 308 [61 Cal.Rptr. 661, 431 P.2d 245]: "Thus it is significant if . . . the claimant is one who purports to have no knowledge or training which would aid him in determining his rights and the public agency purports to be informed and knowledgeable in these matters. . . ."

[3]At oral argument, the Attorney General ·conceded that, so far as that office knew,

petitioner's claim apparently made up, for himself and without any direction from either his superiors or the statute, an arbitrary rule that an employee who belonged to a union which operated a hiring hall must, as a matter of law and without regard to his other efforts,[4] utilize the hiring hall as a means of seeking work. Whether or not such a rule would have validity as a rebuttable presumption, or whether or not it could lawfully have been adopted by the agency itself under its rule-making power, has never been passed on by anyone. The referee and the Board rejected his appeal, not because it was unfounded either in fact or in law, but solely because it had not been filed within the 10-day period.[5]

If, in fact, petitioner was misled by the legal conclusions set forth in the notices given to him, I think that he is entitled to a review of his claim, on its merits.

I would reverse the judgment with directions to determine whether or not petitioner did reasonably rely on the legal conclusions set forth in the notices given to him on January 5, 1967, and, if so, whether or not such reliance was the cause of his delay in attempting to appeal the determinations adverse to him. If such issues are determined in favor of petitioner, a writ should issue directing the department to afford petitioner a review of their decisions, such review to include both the legal validity of the departmental position as set forth in its notices and the factual issues relating to petitioner's efforts to secure employment.

---

no such rule had been adopted by the agency under Unemployment Insurance Code sections 306-310, and that, if petitioner was allowed to prosecute his appeal, the legal validity of the ruling would be open for review.

[4]There are indications in the record that the agency did not contest the fact that petitioner had made honest efforts to find work apart from resort to his union. I note that there is, in the record, some confusion as to whether petitioner had consulted his union at all or had not done so for the full period and a similar confusion as to whether his factual statements in his original claim were 100 percent accurate. Since his appeal was denied on the pure procedural ground, these matters remain undetermined; if his appeal is permitted they may, of course, be decided by the proper administrative tribunal.

[5]Under the rule laid down in *Conti* v. *Board of Civil Service Commissioners* (1969) 1 Cal.3d 351 [82 Cal.Rptr. 337, 461 P.2d 617], petitioner is not subject to a defense of laches for the five-month delay in seeking relief; he is barred, if at all, solely by the 10-day limitation; as I have said above, I do not think that that limitation bars him here.