[Civ. No. 37994. First Dist., Div. One. Nov. 9, 1976.]

UNITED STATES POSTAL SERVICE, Plaintiff and Appellant, v.
UNEMPLOYMENT INSURANCE APPEALS BOARD et al.,
Defendants and Respondents.

## Counsel

W. Daniel Clinton for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Gordon Zane, Deputy Attorney General, for Defendants and Respondents.

## Opinion

**SIMS, J.**—Plaintiff employer has appealed from a judgment of the superior court which denied its petition for writ of mandate (Code Civ. Proc., § 1094.5). It sought review of a decision of defendant appeals board, which summarily reversed a finding of a referee that the employer had good cause for filing a late appeal from an original departmental

determination that denied the employer's objection to the granting of benefits to an ex-employee.

The employer contends that the decision of the appeals board that the employer had not shown good cause for extending the period in which to file an appeal was a prejudicial abuse of discretion, and, also, in the light of existing precedent, a denial of equal protection of the laws. We find that the appeals board abused its discretion, and that the trial court should issue a writ of mandate directing the appeals board to hear the employee's appeal on the merits.

The facts are admitted by the pleadings and are evidenced by the administrative record, including the uncontradicted testimony of the employer's attorney before the referee who heard the employer's áppeal from the original determination.[1]

On April 28, 1973, the employer issued a 30-day notice of discharge for unsatisfactory service to respondent Helen Blas. Her last day of pay status was May 31, 1973. She filed an appeal from her discharge through the employer's grievance procedure. It was denied June 15, 1973. She applied for unemployment insurance benefits, and the employer apparently questioned her right to benefits as provided in sections 1256 and 1327 of the Unemployment Insurance Code.[2]

---

[1]The appeals board points out that no findings of fact and conclusions of law were requested or settled in the trial court. It relies on the following principle: "[I]n the absence of findings of fact and conclusions of law, every intendment is in favor of the judgment or order appealed from and it is presumed that every fact or inference essential to the support of the order and warranted by the evidence was found by the court. [Citations.]" (*Estate of Rule* (1944) 25 Cal.2d 1, 10 [152 P.2d 1003, 155 A.L.R. 1319] [disapproved on another issue *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 866, fn. 2 [44 Cal.Rptr. 767, 402 P.2d 839]]. See also *Reid* v. *Valley Restaurants, Inc.* (1957) 48 Cal.2d 606, 609 [311 P.2d 473]; *Dairyman's Cooperative Creamery Assn.* v. *Leipold* (1973) 34 Cal.App.3d 184, 188-189 [109 Cal.Rptr. 753]; *Willis* v. *Bank of America* (1973) 33 Cal.App.3d 745, 749 and 752 [109 Cal.Rptr. 359]; *Cahall* v. *Department of Motor Vehicles* (1971) 16 Cal.App.3d 491, 495 [94 Cal.Rptr. 182]; and *Block* v. *Laboratory Procedures, Inc.* (1970) 8 Cal.App.3d 1042, 1045 [87 Cal.Rptr. 778].) Here, however, most of the facts are admitted by the pleadings. The record has been augmented by the administrative record which includes the testimony taken by the referee on the issue in dispute. We must, therefore, decide whether or not the trial court erred in determining that the finding of the appeal board is supported by the evidence.

[2]Section 1256 then provided: "An individual is disqualified for unemployment compensation benefits if the director finds that he left his most recent work voluntarily without good cause or that he has been discharged for misconduct connected with his most recent work. [¶] An individual is presumed to have been discharged for reasons other than misconduct in connection with his work and not to have voluntarily left his work without good cause unless his employer has given written notice to the contrary to

On October 4, 1973, the department mailed notice of its determination, reading, "Sec. 1256: The evidence available indicates the claimant was discharged for reasons that do not constitute, or fall short of misconduct. She is therefore held eligible." Section 1328[3] provides for an appeal within 10 days, and the notice expressly stated, "Any appeal from this notice must be filed on or before 10-15-73 to be timely."

On October 18, 1973, the employer appealed that determination to the department, stating that an internal administrative delay had resulted in a late filing. The facts alleged and proved in that regard are reviewed below.

On November 21, 1973, a hearing was held on the employer's application for an extension of time to file the appeal. The referee found that there was good cause for the late appeal, and proceeded to hear the case on the merits. On December 11, 1973, he issued his decision (§ 1334) confirming that there was good cause for the late appeal. He also found that the claimant was discharged for misconduct connected with her work and was disqualified for benefits under section 1256 of the code. The determination of the department was reversed.

the director within five days after the termination of service, setting forth facts sufficient to overcome the presumption. *If the employer files such notice, the question shall immediately be determined in the same manner as benefit claims.* [¶] An individual whose employment is terminated under the compulsory retirement provisions of a collective bargaining agreement to which the employer is a party, shall not be deemed to have left his work without good cause." (Stats. 1959, ch. 1402, § 2, p. 3681, italics added. By Stats. 1973, ch. 761, § 1, p. 1371, effective Jan. 1, 1974, the italicized sentence was deleted, and the following language was substituted, "The presumption provided by this section is rebuttable.")

Section 1327 then provided: "A notice of the filing of a new or additional claim shall be given to the employing unit by which the claimant was last employed immediately preceding the filing of such claim, and the employing unit so notified shall submit within 10 days after the mailing of such notice any facts then known which may affect the claimant's eligibility for benefits." (Stats. 1951, ch. 1694, § 2, p. 3901. Recast by Stats. 1973, ch. 1212, § 162, pp. 2780-2781, operative July 1, 1974.)

[3]Section 1328 then read: "The facts submitted by an employer pursuant to Section 1327 shall be considered and a determination made as to the claimant's eligibility for benefits. The claimant and any employer who prior to the determination has submitted any facts or given any notice pursuant to Section 1327 and authorized regulations shall be promptly notified of the determination and the reasons therefor and may appeal therefrom to a referee within 10 days from mailing or personal service of notice of the determination. The 10-day period may be extended for good cause. The director shall be an interested party to all appeals." (Stats. 1967, ch. 1586, § 8, p. 3799. Recast by Stats. 1973, ch. 1212, § 164, p. 2781, operative July 1, 1974; and amended Stats. 1975, ch. 979, § 1, effective Jan. 1, 1976, by increasing the time provisions from 10 to 20 days, and by the addition of the following language, " 'Good cause,' as used in this section, shall include, but not be limited to, mistake, inadvertence, surprise, or excusable neglect."

On December 18, 1973, the employee filed an appeal (§ 1336) from the referee's decision. Her appeal attacked the merits of the decision, but did not question the finding with respect to the timeliness of the appeal.

On February 13, 1974, the appeals board issued a decision by a divided board, without benefit of argument, reversing the determination of the referee on the issue of the timeliness of the appeal. Two members of the board decided: "The decision of the referee is modified. The employer has not shown good cause for extending the period in which to file the appeal and therefore the employer's appeal to a referee is dismissed. The decision of the referee is set aside. The Department's determination shall stand."

The employer thereupon instituted the proceedings under review. This appeal followed the judgment denying its petition for writ of mandate after the trial court exercised its independent judgment upon the evidence.

The facts in the administrative record which was reviewed by the appeals board and the trial court are as follows: The appeal dated October 18, 1973, was filed by the labor law field office of the Law Department of the United States Postal Service in San Francisco. It alleged, in explanation of the late filing, "This office has recently been assigned the responsibility for representing the Postal Service regarding appeals that may have to be filed with your office. The Form 1080 announcing that the above claimant was eligible for benefits was mailed initially to the Postal Data Center in San Mateo, California, which forwarded it to us. [¶] Although October 15 has passed, the notice indicated that any appeal must be biled [sic] by October 15, 1973. This is to request permission to file an appeal in this matter. By the time this office received the form 1080 and it was assigned to me and reviewed, the October 15 date had passed. We are in the process of filing a formal request with the Department of Human Resources Development to request that the Forms 1080 be mailed directly to this office, rather than to the Postal Data Center. Accordingly, these delays will be eliminated."

At the hearing the attorney for the employer testified that his office was responsible for representing the postal service in 15 western states in all federal court work, in arbitration cases, in labor relations board cases, in E.E.O.C. cases and in compensation insurance matters; that it has 70

to 80 cases it is working on at one time; that the responsibilities of the office had recently been increased by the assignment of unemployment insurance compensation matters; that they had only been receiving notices of determinations from the unemployment insurance offices for about one month; and that they were attempting to have such notices sent directly to the law office in the future. The notice mailed October 4, 1973, to "Director-Postal Data Center" in San Mateo was received in the law office on October 10. He assigned the delay to the procedures and caseload, and stated that by the time the notice was assigned for action and investigated the 15th had passed. No showing was made in opposition, nor has any prejudice to the employee been suggested. *California Human Resources Dept.* v. *Java* (1971) 402 U.S. 121 [28 L.Ed.2d 666, 91 S.Ct. 1347], indicates that benefits should have continued under the department's original determination.

In *Gibson* v. *Unemployment Ins. Appeals Bd.* (1973) 9 Cal.3d 494 [108 Cal.Rptr. 1, 509 P.2d 945], the court dealt with a late appeal of an employee claiming unemployment insurance benefits. There, as here, the appeals board relied upon the administrative practice of the appeals board. (See 9 Cal.3d at p. 496, fn. 2, and cf. p. 498, fn. 6.) There, as here, the statute (§ 1328) and the rules of the board (Cal. Admin. Code, tit. 22, § 5028) each provided that "good cause" may be shown to excuse late filing. There, as here, the appeal was filed three days late. There a calendaring error was engendered because of an unusually heavy case load in an understaffed office. Here the delay in processing the matter was caused by the same factors. There the court concluded, "We perceive no justification for an administrative construction of section 1328 to preclude relief in cases of brief, non-prejudicial delay arising from excusable error of counsel. Finally, we conclude that on the undisputed record in the instant case petitioner has shown good cause to permit the late filing of his appeal." (*Id.,* at p. 496. See also *Flores* v. *Unemployment Ins. Appeals Bd.* (1973) 30 Cal.App.3d 681, 684-685 [106 Cal.Rptr. 543]; and note *Faulkner* v. *Public Employees' Retirement System* (1975) 47 Cal.App.3d 731, 737 [121 Cal.Rptr. 190].) The court rationalized its decision as follows: "On the undisputed facts of this case, we find not only that the trial court erred in following the board's restrictive construction of section 1328, but that, as a matter of law petitioner has shown 'good cause' for relief under that section. The delay in the case at hand was only three days. Neither the board nor petitioner's former employer claims prejudice arising from this insignificant tardiness. In fact, the referee, without objection from the employer,

heard petitioner's appeal on the merits; if he had decided the issue at that time he would have saved considerable time and expense to all concerned. Finally, the calendaring error of petitioner's overburdened counsel constitutes the sort of error we have found excusable; under the circumstances of this case, and in view of the remedial objectives and informal procedures of the Unemployment Insurance Code, we should not magnify that mistake to bar petitioner's right to a hearing on the merits." (9 Cal.3d at p. 501.)

The appeals board seeks to distinguish *Gibson* on three grounds. It claims, on the basis of a prior appeals board decision,[4] that it is established by administrative construction that the desire of an employer to make an investigation before deciding to file an appeal does not constitute good cause for a delayed appeal. (See *Walsh* v. *Dept. Alcoholic Bev. Control* (1963) 59 Cal.2d 757, 762 [31 Cal.Rptr. 297, 382 P.2d 337]; *Coca Cola Co.* v. *State Bd. of Equalization* (1945) 25 Cal.2d 918, 921 [156 P.2d 1]; and *Flores* v. *Unemployment Ins. App. Bd., supra,* 30 Cal.App.3d 681, 684.) If the application were made before the expiration of the 10-day period such a ruling might nullify the provisions of the statute. The ruling is of questionable application here, because it is alleged that the 10-day period expired before the departmental decision could be reviewed and the appeal filed. At best the employer's attorney had three days, and perhaps only one, in which to act. In any event, *Gibson* makes it clear that the appeals board cannot nullify the express language of the statute. There the court noted, "We recognize that the board's decisions represent a settled administrative construction of the statute which must be given great weight. (See *Whitcomb Hotel, Inc.* v. *Cal. Emp. Com.* (1944) 24 Cal.2d 753, 756 . . .) It is, however, 'the duty of this court, when . . . a question of law is properly presented, to state the true meaning of the statute . . . even though this requires the overthrow of an earlier erroneous administrative construction.' (*Bodinson Mfg. Co.* v. *California E. Com.* (1941) 17 Cal.2d 321, 326 . . .)" (9 Cal.3d at p. 498, fn. 6.)

■ Secondly, the appeals board contends that there should be a distinction between cases where the appellant himself fails to file a timely appeal, and cases where the appeal is entrusted to an attorney who makes the sort of error which the courts generally find good cause for excusing timely performance. It suggests that the excuse should be

[4]This decision is referred to merely as "Benefit Decision 6485." Not having been furnished with the text of the decision we refrain from taking judicial notice of it. (See Evid. Code, § 452, subd. (c), and cf. § 453.)

disregarded because the error was committed by internal procedures of the Postal Service in communicating between one branch office and its employed legal staff, and because of its failure to provide adequate legal staff to handle its business. We cannot say that there should be a distinction between the use of separate counsel or employed counsel in determining whether there was excusable inadvertence of a representative of the appellant which is sufficient to constitute good cause. Any corporate body must act, or omit to act, through agents of one sort or other. (See *Faulkner* v. *Public Employees' Retirement System, supra,* 47 Cal.App.3d 731, 737.)

Finally, it is contended that the rationale of *Gibson* does not apply. They quote the following from the decision: "We summarize our position. We find that the language and purpose of the Unemployment Insurance Code, and the judicial construction of its provisions, present a consistent picture—a remedial-statute, liberally construed to carry out the state policy of aiding the unemployed worker, administered informally without resort to technicalities *that might deprive the unsophisticated applicant* of his right to benefits." (9 Cal.3d at pp. 500-501, italics added by Attorney General.) The appeals board points out that the purposes of the act will be frustrated if a determination of the eligibility for benefits is delayed by excusable neglect, as well as procrastination, by the employer. It suggests that to apply other than an arbitrary standard will promote applications for delay, or for relief from tardy filing, by employers. The simple answer to that contention is that the Legislature did not make such a determination. The statute stated, "The claimant and *any employer* . . . may appeal . . . to a referee within 10 days from mailing or personal service of notice of the determination. The 10-day period may be extended for good cause." (§ 1328 part, italics added.) ■ The same 10 days is provided for the claimant and the employer. The "good cause" applies to the 10 days whether it be the claimant or the employer who seeks to attack the determination.

"The concept of good cause should not be enshrined in legal formalism; it calls for a factual exposition of a reasonable ground for the sought order. The good cause may be equated to a good reason for a party's failure to perform that specific requirement from which he seeks to be excused." (*Waters* v. *Superior Court* (1962) 58 Cal.2d 885, 893 [27 Cal.Rptr. 153, 377 P.2d 265]. See *Gibson* v. *Unemployment Ins. Appeals Bd., supra,* 9 Cal.3d 494, 499, fn. 8; and *Cal. Portland Cement Co.* v. *Cal. Unemp. Ins. Appeals Board* (1960) 178 Cal.App.2d 263, 272-273 [3

Cal.Rptr. 37].) Section 1256 (see fn. 2 above) makes it clear that every termination of employment is not accompanied by a right to unemployment compensation. The employer's interest in avoiding unwarranted liability may not equate with the legislative objective of reducing the hardship of employment. (See *Gibson* v. *Unemployment Ins. Appeals Bd.,* *supra,* 9 Cal.3d at p. 499; and *Perales* v. *Department of Human Resources* *Dev.* (1973) 32 Cal.App.3d 332, 336 [108 Cal.Rptr. 167].) Nevertheless, the case last cited indicates that the Legislature did not intend that benefits should be paid when the claimant was not entitled to them. (See 32 Cal.App.3d at p. 337.) Here, in fact, the referee found that the claimant was not entitled to benefits. We see no necessity to approve a procedural rule which would facilitate the payment of unwarranted benefits. "Good cause" should be uniformly applied to the parties as the circumstances warrant. Such a rule is not a license for unwarranted delays by the employer.

The most recent amendment of the statute (see fn. 3 above) does not in our opinion represent a change in the law. It is clearly a legislative declaration of what the Legislature understood "good cause" to mean in the first place. We note again that there is no distinction between the "good cause" to be applied to the claimant and that to be applied to the employer.

The judgment of the superior court is reversed and the cause remanded with directions to issue mandate to compel respondent board to hear the employee's appeal on the merits.

Molinari, P. J., and Elkington, J., concurred.