[Civ. No. 48144. Second Dist., Div. Four. Jan. 6, 1977.]

JUDITH M. AMARO, Plaintiff and Appellant, v.
UNEMPLOYMENT INSURANCE APPEALS BOARD,
Defendant and Respondent.

COUNSEL

Bersch & Kaplowitz, Bardeen, Bersch & Kaplowitz and Blanche C. Bersch for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Richard M. Radosh and Martin H. Milas, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**JEFFERSON (Bernard), J.**—Petitioner Judith M. Amaro sought a writ of mandate in the superior court (pursuant to Code Civ. Proc., § 1094.5), to direct respondent California Unemployment Insurance Appeals Board (hereinafter, the Board) to vacate its decision affirming the dismissal of petitioner's administrative appeal. The dismissal action had been taken by a referee of the Board who determined, after a hearing, that the appeal from a denial of unemployment insurance benefits to petitioner, made by the California Department of Human Resources Development (hereinafter, the Department), was untimely.

The trial court upheld the administrative ruling of the Board, making certain findings of fact and conclusions of law and denied the petition for writ of mandate. Petitioner has appealed from the judgment.

The record discloses that petitioner, a young married woman with a small child, had been employed until late June 1974, while her husband was in college. She left her employment after her husband graduated and had found employment which required relocation of the family. He had not received a paycheck by July 6, 1974, the date on which petitioner applied for unemployment insurance benefits. Petitioner's application was denied by the Department on two grounds. The first ground was based upon an administrative interpretation of Unemployment Insurance Code section 1264, which precluded benefits to persons leaving their employment voluntarily for domestic reasons, excepting, however, any individual who "is the sole or major support of his or her family." The Department took the view that petitioner's husband, rather than petitioner, was the supporting spouse. The second ground was that petitioner was not available to accept immediate employment because she had not made satisfactory arrangements for the care of her child.

Petitioner received a notice from the Department telling her of the denial. This was several days after July 25, 1974, the date the notice was mailed to her. Petitioner had been advised orally by the Department interviewer of her right to appeal an adverse ruling, although nothing had been said about a time limitation on appeal. On the front of the notice petitioner received, in the lower right corner, was the statement in print, larger than ordinary typewriting, that she had until August 5, 1974, to file a timely appeal.

Petitioner's appeal was filed on September 6, 1974—approximately one month after the appeal time had run.

Petitioner testified at the administrative appeal hearing, before the Board's referee, that she did not read this statement about a time limit for an appeal, only reading that portion of the document denying her benefits. She was upset about the determination, and read no further. She tried to find another job, but was not successful; she stated that upon the advice of a friend, she ultimately filed her appeal from the denial of benefits.

The administrative appeal hearing was held on October 3, 1974. The referee limited the inquiry to the question of timeliness—whether petitioner had "good cause" for the late filing of her appeal. On October 4, 1974, the referee dismissed the appeal, determining that petitioner had not shown good cause to justify an extension of the 10-day period for filing an appeal. The referee's decision was upheld by action of the Board on December 17, 1974. When the matter was reviewed in the trial court, the trial court refused to consider any issue but timeliness, as is reflected in the findings of fact and conclusions of law signed by the trial judge.

The time limitation for filing an administrative appeal to a referee of the Board from the denial of unemployment insurance benefits is contained in Unemployment Insurance Code section 1328. At the time petitioner was notified of denial, section 1328 provided, in pertinent part, that "[t]he claimant . . . may appeal therefrom [a denial] to a referee within 10 days from mailing or personal service of notice of the determination. *The 10-day period may be extended for good cause. . . .*" (Italics added.)

What constitutes the "good cause" referred to in section 1328 was the issue in *Gibson* v. *Unemployment Ins. Appeals Bd.* (1973) 9 Cal.3d 494,

496 [108 Cal.Rptr. 1, 509 P.2d 945], where the California Supreme Court observed that "[w]e perceive no justification for an administrative construction of section 1328 to preclude relief in cases of brief, non-prejudicial delay arising from excusable error of counsel." In that case, a three-day delay in filing an appeal had occurred because of the heavy workload in a legal aid office. The heavy workload was found to furnish "good cause" within the meaning of section 1328. *Gibson* termed "draconian" the administrative ruling that "the slightest and most excusable inadvertence" could be employed to deprive a claimant of appeal rights under the Unemployment Insurance Code, a remedial statute subject to liberal construction "to further the legislative objective of reducing the hardship of unemployment. [Citations.]" *(Gibson, supra,* 9 Cal.3d 494, at p. 499.)[1]

Other decisions that have considered the "good cause" issue involved in Unemployment Insurance Code section 1328 have tended to fall factually into the *Gibson* category of de minimus delay, justifying the late appeal *(e.g., Flores* v. *Unemployment Ins. Appeals Bd.* (1973) 30 Cal.App.3d 681 [106 Cal.Rptr. 543] (one day); *United States Postal Service* v. *Unemployment Ins. Appeals Bd.* (1976) 63 Cal.App.3d 506 [134 Cal.Rptr. 19] (three days)), or into the category of substantial delay without much justification, resulting in the disallowance of the late appeal (e.g., *Fermin* v. *Department of Employment* (1963) 214 Cal.App.2d 586 [29 Cal.Rptr. 642] (three months); *Perez* v. *Unemployment Ins. App. Bd.* (1970) 4 Cal.App.3d 62 [83 Cal.Rptr. 871] (five months)). In one case there was an unstated period of delay accompanied by an "asserted lack of understanding" of appeal procedure by the claimant, although appeal procedure had been explained; the appeal was not allowed *(Hicks* v. *Sheffield* (1972) 23 Cal.App.3d 441 [100 Cal.Rptr. 274]).

In the case at bench we have a petitioner who filed her appeal a month late and offered as an explanation that she failed to ascertain her appeal rights with any specificity prior to that time because of dismay

---

[1]One of the cases cited and discussed by *Gibson* in a footnote is *Cal. Portland Cement Co.* v. *Cal. Unemp. Ins. Appeals Board* (1960) 178 Cal.App.2d 263 [3 Cal.Rptr. 37], in which the court construed the term "good cause" in Unemployment Insurance Code section 1256, which denies benefits to persons who leave work "without good cause." In rejecting a contention by the employer as being contrary to the requirement of liberal construction of the act, the *Cal. Portland Cement Co.* case concluded that an interpretation of "good cause" must take account of "real circumstances, substantial reasons, objective conditions, palpable forces that operate to produce correlative results, adequate excuses that will bear the test of reason, just grounds for action, and always the element of good faith. . . ." *(Cal. Portland Cement Co., supra,* 178 Cal.App.2d 263, at pp. 272-273; see *Gibson, supra,* 9 Cal.3d 494, 499, fn. 8.)

occasioned by the denial of benefits. ▨ Such conduct does not appear to us to constitute such a minimal delay and an excusable inadvertence on the part of petitioner as to constitute "good cause" to extend the 10-day limit for filing an appeal.

On this appeal, as in the trial court, petitioner argues that the doctrine of equitable estoppel should be applied to her case. Her basic contention is that the denial to her of benefits constituted an incorrect decision by the Department and, since this is so, estoppel should prevent the disallowance of her late appeal.

Petitioner relies on *De Somov* v. *Unemployment Ins. Appeals Bd.* (1974) 36 Cal.App.3d 845 [112 Cal.Rptr. 159], a case interpreting section 1264 of the Unemployment Insurance Code. *De Somov* held that the married female claimant was entitled to benefits because she could show that she had contributed more than half her family's income over an extended period of time prior to filing for benefits, despite the fact that her husband was providing, in limited fashion, the only family income at the time the benefits were sought. *De Somov* was followed by *Boren* v. *Department of Employment Development* (1976) 59 Cal.App.3d 250 [130 Cal.Rptr. 683], which declared section 1264 invalid on constitutional grounds, i.e., because it denied equal protection of the laws to female applicants for unemployment insurance benefits.

In 1974, however, at the time petitioner applied for benefits, *De Somov* was the current applicable decision interpreting section 1264, and had been a final decision for some months; the Department was bound to follow it. Petitioner argues that had the Department followed the interpretation of section 1264 set forth in *De Somov,* she would have received her benefits.

We note that the Department interviewer who determined that petitioner was not entitled to benefits gave, in addition to the "major support" reason, a second reason for denial, relating to petitioner's availability for work. However, we assume, arguendo, that petitioner is correct in asserting that she was wrongfully denied benefits. In seeking to apply the doctrine of equitable estoppel, petitioner refers us to *City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462 [91 Cal.Rptr. 23, 476 P.2d 423], setting forth that " '[g]enerally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the

estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.' " (*Mansell, supra,* 3 Cal.3d 462, at p. 489.) The principle is well established that " '[t]he doctrine of equitable estoppel may be applied against the government where justice and right require it. [Citations.]' Correlative to this general rule, however, is the well-established proposition that an estoppel will not be applied against the government if to do so would effectively nullify 'a strong rule of policy, adopted for the benefit of the public. . . .' " (*Mansell, supra,* 3 Cal.3d 462, at p. 493.)

Respondent Board takes the position that the "facts" of which the government was or should have been aware concerned petitioner's *appeal* rights, rather than her right to benefits, and that as petitioner was not misled as to those rights, equitable estoppel elements are not present in the case at bench.

Petitioner contends that she was misled as to the legality of her claim for benefits by the Department, which had a duty to apply the law correctly; that she was ignorant of the correct legal interpretation of section 1264; and that she relied upon the Departmental determination to her injury, i.e., the disallowance of her late appeal.

The *Mansell* case emphasizes, along with the elements of equitable estoppel, the importance of public policy considerations when the doctrine of estoppel is sought to be applied against the government. The public policy reflected in the Unemployment Insurance Code is that of aiding those persons who are "unemployed through no fault of their own" (Unemp. Ins. Code, § 100); it has long been held that the legislation is remedial, subject to liberal construction, and that the procedures for obtaining benefits are geared to informality. (See *Gibson, supra,* 9 Cal.3d 494.) Other policies also underlie the inclusion of procedural rules in the Unemployment Insurance Code. Time limitations have been included in recognition of a long-standing legal public policy of keeping litigation within reasonable confines and dispensing with "stale claims." Another policy is implicit in the appeal provisions of the Unemployment Insurance Code—recognition of the reality that administrative decisions may sometimes be incorrect.

If the government is to be estopped from applying time limitations every time there is a determination, in retrospect, that a decision was wrong, the ultimate result means the end of time limitations on the right

of appeal. The Legislature has not adopted this approach, as may be seen from the most recent amendments to section 1328 of the Unemployment Insurance Code which, in 1975, extended the time of limitation on administrative appeals from 10 to 20 days, and defined "good cause" in terms similar to the standard described in Code of Civil Procedure section 473 for civil litigation generally, although not limiting it to that standard.[2]

■ By these amendments, the Legislature has signalled its intention to liberalize the procedural framework of the Unemployment Insurance Code, but *without* completely doing away with all procedural rules. We must assume that the Legislature was aware of the fact that not all administrative decisions are always correct.

■ We decline petitioner's invitation to apply the doctrine of equitable estoppel against the government in the case at bench. Since the delay in seeking the appeal was substantial, and the stated reason for delay less than substantial, we conclude that the trial court correctly denied the relief sought by petitioner.

The judgment appealed from is affirmed.

Kingsley, Acting P. J., and Dunn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 17, 1977.

---

[2]The 1975 amendments to section 1328 defined "good cause" to "include, but not be limited to, mistake, inadvertence, surprise, or excusable neglect."