[Civ. No. 46220. First Dist., Div. Two. Jan. 20, 1981.]

ESTHER E. MONROE et al., Plaintiffs and Respondents, v.
OAKLAND UNIFIED SCHOOL DISTRICT OF
ALAMEDA COUNTY, Defendant and Appellant.

COUNSEL

Crosby, Heafey, Roach & May, Raoul D. Kennedy and Ned N. Isokawa for Defendant and Appellant.

Keker & Brockett, John W. Keker and Robert A. Van Nest for Plaintiffs and Respondents.

OPINION

**TAYLOR, P. J.**—Oakland Unified School District (district) appeals from a judgment[1] entered on a jury verdict finding that it had breached

---

[1]Originally, the instant action for misrepresentation and breach of contract was certified as a class action; after the class was decertified and the misrepresentation cause of

each of the plaintiffs' fixed term contracts when the district reallocated certain federal funds, and terminated the previously unemployed plaintiffs before the end of 1975. The district's major contentions are that the trial court erred and abused its discretion by excluding evidence of one of the plaintiff's arrests and misdemeanor convictions, by excluding evidence on the district's defense of impracticability, and by applying the collateral source rule to exclude evidence pertaining to the unemployment benefits received by plaintiffs. For the reasons set forth below, we have concluded that the judgment must be affirmed.

Viewing the record most strongly in favor of the judgment, as we must, the following pertinent facts appear:

All of the plaintiffs were employed by the district pursuant to a grant authorized by the Comprehensive Employment and Training Act of 1978 (29 U.S.C. §§ 961-966), specifically the "CETA VI" program, an adjunct to the already enacted CETA legislation of 1973 (29 U.S.C. §§ 801-956). CETA VI allocated federal funds to provide public service employment, job training and employment opportunities for economically disadvantaged unemployed and underemployed persons (29 U.S.C. §§ 801, 961-966). The guidelines for the CETA VI program required that the applicant be unemployed at the time of application and live in Oakland; the pay was $3.50 per hour. The CETA VI guidelines also required that the sponsoring public agency use the federal funds to create new jobs rather than supplement its budget by using CETA VI funds for persons already employed.

After the district was informed in late 1974 that CETA VI funds would be available, the district created 70 new maintenance and custodial helper positions in keeping with the congressional goal of hiring rapidly after the funds were appropriated.

On January 18, 1975, between 700-800 persons appeared at a school in the district to complete applications for the 70 newly created CETA

---

action dismissed, what remained were the separate and individual breach of contract actions, consolidated for trial, brought by the originally named plaintiffs, Esther Monroe, Herman Lewis, Mary Hopkins, Jessie Mayes, Alan Burfford, Houston Cartwright, Larry Taylor, Willie Booker, Bing Crosby, Gwendolyn Adair and Manual Odom. Subsequently, Melvin Baxter, Jr., Willie Louis Thompson, Jr., deceased, by and through his personal representative R. Clark, Tod Donaldson, Larry Johnson, Isaiah Jackson, Paul Mitchell, Willie Thomas, Roger Hickey, Eric Daste and Herschel Pleasants were added. As plaintiffs Herman Lewis, Larry Taylor, Isaiah Jackson, Paul Mitchell and Eric Daste did not appear for trial, no judgment was entered in their favor.

VI positions. These applications and others were screened and the most promising candidates later interviewed. Each of the plaintiffs was interviewed. Prior to the interview, many of the plaintiffs had read an article in the Oakland Tribune quoting then acting deputy superintendent of schools, Alden W. Badal, and stating that the jobs would last through 1975. During the interview, most of the plaintiffs were told that the job would last through 1975. All district personnel involved in the interviewing process understood that the CETA VI grant was for 1975 and believed that the jobs would last that long. One district employee admitted that he told the persons he interviewed that the job would last through 1975.

After plaintiffs were hired, each received a letter dated February 27, 1975, from Robert Loeliger, the district's director of classified personnel, stating: "Our current *CETA...VI Grant is funded until December 31, 1975. It is anticipated that your employment will continue through this date*, subject to your performing your duties on a satisfactory basis." (Italics added.)

In the spring of 1975, the district became aware of an approaching budgetary crisis, as it could not receive assurances that it would continue to receive CETA title VI funds to pay for classroom teachers. Accordingly, the district notified 186 teachers that they would be laid off. Thus, the district knew that it would be subject to a teacher strike to protest these layoffs which would result in a different student teacher ratio. The district then concluded that the limited available funds, including the CETA title VI funds, should be used first to pay the salaries of classroom teachers.

Therefore, on June 14, 1975, the district wrote to each of the plaintiffs, so far as pertinent, as follows: "At the time of your employment, it was planned that your position would last for the duration of the CETA Title VI contract. However, due to the need for the district to revise previous plans for the use of CETA ... VI monies, *it will not be possible for the district to continue your employment beyond July the 15th, 1975*." (Italics added.)

As some of the plaintiffs were reemployed during 1975 after their layoff by the district, the jury deducted these amounts from the total

amount of damages awarded to each plaintiff.[2]

■ Preliminarily, we turn to the district's contention concerning the sufficiency of the evidence to support the verdict and judgment of $3,629 as to the deceased plaintiff, Willie Louis Thompson, Jr., who was killed in 1976. The district argues that since Thompson did not testify, there was insufficient evidence to support the implied finding of the verdict in his favor, namely, that as to him as for all of the other plaintiffs, there was a contract for his employment for a set duration (i.e., all of 1975). This contention borders on the frivolous. As indicated by our above summary of the pertinent evidence (most of it uncontroverted), the district used substantially the same procedures to hire each of the plaintiffs at about the same time. Thompson was interviewed and received the same letters dated February 27, 1975, and June 14, 1975. Thus, the jury was properly entitled to draw the reasonable inference that the representations made to Thompson were the same as those made to each of the other plaintiffs, namely, that the position was funded through December 31, 1975, and would last that long if his performance was satisfactory (*Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, fn. 9, p. 814 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513]).

■ We turn next to the district's contention concerning the exclusion of plaintiff Mayes' record of arrests and misdemeanor convictions. The record indicates that the CETA VI job application asked whether the applicant had been arrested or convicted of a crime. Mayes listed a conviction but failed to list a series of 20 arrests on a variety of misde-

---

[2]The totals were as follows:

| | |
|---|---|
| Gwendolyn Adair | $3,629 |
| Melvin O. Baxter, Jr. | $3,229 |
| Willie Booker | $1,797 |
| Alan Burfford | $3,629 |
| Houston Cartwright | $1,497 |
| Bing Crosby | $3,444 |
| Tod Donaldson | $3,629 |
| Roger Hickey | $2,074 |
| Mary Hopkins | $1,853 |
| Larry Johnson | $1,979 |
| Jessie Mayes | $2,005 |
| Esther Monroe | $3,629 |
| Manuel Odom | $1,664 |
| Herschel Pleasants | $3,629 |
| Willie Thomas | $3,629 |
| Willie Louis Thompson | $3,629 |

meanor and felony charges ranging from the possession of narcotics to robbery. After his employment, the district learned about his arrest record but did not discharge him. In fact, Mayes' layoff letter stated that his performance had been satisfactory and that he was laid off solely for lack of funds. At trial, the district attorney sought to question Mayes about his arrest records in order to impeach his credibility. The trial court, sustained Mayes' objection predicated on Evidence Code section 352.[3]

On appeal, the district argues that the court abused its discretion as Mayes' credibility was a central issue. The district is apparently still not aware that Evidence Code, section 787 expressly precludes attacking a witness' credibility by showing prior arrests for misdemeanors or felonies or prior misdemeanor convictions (*Grudt v. City of Los Angeles* (1970) 2 Cal.3d 575, 591-593 [86 Cal.Rptr. 465, 468 P.2d 825]). In the context of this case, the district's argument is egregious. The purpose of the CETA title VI funds awarded to the district was to provide gainful employment for those whose need for jobs was perceived to be greatest among the unemployable groups, such as ex-offenders who are excluded from the job market because of factors totally irrelevant to their ability to perform the work in question. Here, any other ruling by the trial court would have been an abuse of discretion.

■ The district's major contention on appeal is that the trial court erroneously excluded evidence pertaining to the unemployment benefits received by each of the plaintiffs. *Billetter v. Posell* (1949) 94 Cal. App.2d 858 [211 P.2d 621], held at page 860, that in computing the damages awarded to a wrongfully discharged employee in an action for breach of contract, unemployment insurance benefits "are not deductible as compensation received from other employment in mitigation of damages." The court recognized the public policy underlying the payment of unemployment benefits by explaining at page 860 that "Benefits of this character are intended to alleviate the distress of unemployment and not to diminish the amount which an employer must pay as damages for the wrongful discharge of an employee."[4] We re-

---

[3]The statute rests discretion in the trial court to exclude evidence where its probative value is substantially outweighed by the probability that its admission will create a substantial danger of prejudice (*Kessler v. Gray* (1978) 77 Cal.App.3d 284, 291 [143 Cal.Rptr. 496]).

[4]This legislative purpose of unemployment benefits is set forth by Unemployment Insurance Code section 100, which is the determinative guide for the interpretation of the statute and its benefits (*Amaro v. Unemployment Ins. Appeals Bd.* (1977) 65 Cal. App.3d 715 [135 Cal.Rptr. 493]).

cently reiterated and followed the rule in another breach of employment contract action in *Rabago-Alvarez* v. *Dart Industries, Inc.* (1976) 55 Cal.App.3d 91 at page 99 [127 Cal.Rptr. 222]. Thus, there is no merit in the district's argument that *Billetter, supra,* is outdated and poorly reasoned. We note that the identical approach for identical public policy reasons is followed by the federal courts (see *Inda* v. *United Air Lines, Inc.* (9th Cir. 1977) 565 F.2d 554, cert. den. 435 U.S. 1007 [56 L.Ed.2d 388, 98 S.Ct. 1877]; *Abron* v. *Black & Decker Mfg. Co.* (D.Md. 1977) 439 F.Supp. 1095, 1115).

The district merely asserts that these authorities share the infirmities of *Billetter, supra.* Although *Bowe* v. *Colgate-Palmolive Company* (7th Cir. 1969) 416 F.2d 711, 721, held that the reduction of unemployment benefits was proper as a valid exercise of the trial court's discretion, the more persuasive authority is *Labor Board* v. *Gullett Gin Co.* (1951) 340 U.S. 361 [95 L.Ed. 337, 71 S.Ct. 337], which held that the National Labor Relations Board had power to award back pay without deducting unemployment compensation. The court stated at page 364 [95 L.Ed. at page 342]: "To decline to deduct state unemployment compensation benefits in computing back pay is not to make the employees more than whole, as contended by respondent. Since no consideration has been given or should be given to collateral *losses* in framing an order to reimburse employees for their lost earnings, manifestly no consideration need be given to collateral benefits which employees have received." In light of the above authorities, the district's argument that the trial court erroneously applied the collateral source rule is without merit.

Contrary to the district's contention, the law of this state does not require the mitigation of damages by everything of value received during a period of wrongful unemployment. Rather, the rule of mitigation requires only the duty to seek other employment (*Parker* v. *Twentieth Century-Fox Film Corp.* (1970) 3 Cal.3d 176 [89 Cal.Rptr. 737, 474 P.2d 689, 44 A.L.R.3d 615]; *Gonzales* v. *Internat. Assn. of Machinists* (1963) 213 Cal.App.2d 817 [29 Cal.Rptr. 190]). As we have indicated above at page 809, footnote 2, the amounts earned by those plaintiffs who subsequently obtained other employment were properly subtracted from each award by the jury.

Equally untenable and opposed to the policy and purpose of unemployment benefits described above, is the district's contention that the failure to deduct unemployment compensation from the damages

awarded results in an unfair recovery. Rather, like sick pay and paid vacations, unemployment benefits depend on the length of employment and the rate of pay. Thus, to achieve the threshold of eligibility, a discharged employee must have earned at least $750 during the base period (a 12-month period that terminates about 4 months before the date of discharge; Unemp. Ins. Code, §§ 1275, 1281). Benefits are paid during the benefit year (Unemp. Ins. Code, § 1276) but the maximum benefits available may not exceed 26 times the weekly benefits; and in no case shall the total amount of benefits payable be more than one and one-half the wages paid to the employee during the base period. No new benefits may be received until the 51-week benefit year is exhausted (Unemp. Ins. Code, §§ 1280, 1281).

Thus here, by wrongfully reducing the earnings of the plaintiffs, the district reduced the amount of benefits to which the plaintiffs were entitled. This is particularly egregious as present unemployment was one of the prerequisites for the CETA VI positions. Furthermore, the plaintiffs were forced to collect benefits at a time when they should have been employed under the CETA VI program which was specifically designed and funded for the hard-core unemployed. Thus, the plaintiffs here were forced to prematurely exhaust future benefits (cf. *Lewis* v. *County of Contra Costa* (1955) 130 Cal.App.2d 176, 178-179 [278 P.2d 756]).

■ Finally, we turn to the district's contention concerning the trial court's alleged abuse of discretion in the exclusion of evidence pertaining to its defense of impracticability. The record indicates that the district sought to introduce the testimony of its then acting associate superintendent of planning, personnel and research, Edwin Larsen, that its performance of its promise to employ the plaintiffs through 1975 was excused because of its other financial difficulties resulting from the nonrenewal of its CETA title VI funds for classroom teachers. The substance of Larsen's testimony (outside the presence of the jury) was that the district generally was in financial trouble and needed the CETA VI money for other purposes. Larsen also testified as to the district's decision to lay off the plaintiffs and use the funds for classroom teachers, despite the fact that the CETA VI funds were specifically allocated for a particular purpose and were not to be used by the district for persons employed prior to the program. Given this admission by the district's witness of the district's knowing and wilful violation of the purposes for which the district received the title VI funds, we need not discuss the matter in great detail.

The defense of impracticality (or impossibility) of performance is a matter of law to be decided by the trial court (*Glens Falls Indem. Co. v. Perscallo* (1950) 96 Cal.App.2d 799, 802 [216 P.2d 567]). We can only conclude that the trial court properly excluded the evidence and noted that: "... there was complete possibility of paying—of continuing the employment of the CETA workers and of paying them, the money was there, the work was there." There was no impossibility of performance.[5]

The judgment is affirmed.

Miller, J., and Smith, J., concurred.

---

[5]This ruling was correct as Larsen's testimony met neither the definition of impossibility of Civil Code section 1597 ("Everything is deemed possible except that which is impossible in the nature of things") nor the definition of impracticability of *Mineral Park Land Co. v. Howard* (1916) 172 Cal. 289 [156 P. 458]; *City of Vernon v. City of Los Angeles* (1955) 45 Cal.2d 710 [290 P.2d 841]; *Schmeltzer v. Gregory* (1968) 266 Cal.App.2d 420 [72 Cal.Rptr. 194].