[No. AO15317. First Dist., Div. Three. Nov. 3, 1983.]

COUNTY OF SANTA CLARA, Plaintiff and Appellant, v.
BEVERLEE MYERS, as Director, etc., Defendant and Respondent.

## COUNSEL

Ann Miller Ravel, Acting County Counsel, and Thomas William Cain, Deputy County Counsel, for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Thomas Warriner, Assistant Attorney General, and Charlton G. Holland, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**WHITE, P. J.**—Petitioner and appellant County of Santa Clara (hereinafter County or appellant) appeals from a judgment of the Superior Court of the

City and County of San Francisco denying the County's petition for a writ of mandate directing respondent Director of the California Department of Health Services to allow the County to reopen the County's Medi-Cal cost report or to file a late appeal to the Medi-Cal audit settlement for the fiscal year ending June 30, 1975.

The Social Security Act provides for federal funds for medical assistance to low income individuals directly through Medicare and through state governments (Medicaid) on a 50 percent matching-fund basis. The Medicaid health care program established in California is known as Medi-Cal and operates under the California Department of Health Services (Department). Medi-Cal pays the reasonable cost of in-patient hospital services based on an annual cost report (cost report) prepared by the health care provider and filed with the Department. The cost report is subject to review and auditing by the Department prior to any financial settlement with the provider. The federal Medicare reimbursement system similarly provides for the submission of annual cost reports and for review and auditing.

In November of 1974, appellant County, which operates the Santa Clara Valley Medical Center, filed its Medi-Cal cost report for fiscal year ending June of 1974. Appellant filed for fiscal year ending June of 1975 in November of 1975. Appellant likewise submitted cost reports to Medicare for reimbursement for the same years at approximately the same times. Medicare issued its audit report for fiscal year 1974 in April of 1975 and for fiscal year 1975 in June of 1976. In December of 1976, the County appealed the Medicare audit report for 1975 only.

In late 1976 and early 1977, while the Medicare appeal was pending, the Medi-Cal department elected to audit County's cost reports for fiscal years 1974 and 1975. In March of 1977, the Department issued its audit reports for fiscal year ending 1974 and fiscal year ending 1975. The County did not appeal any of the audit adjustments made in the Medi-Cal audit reports within the 30-day period for filing an appeal provided for in section 51018[1] of title 22 of the California Administrative Code.

Sometime after October of 1977, the County's Medicare appeal was expanded to include errors subsequently identified by the County. Those errors, which are the subject of the County's present dispute with Medi-Cal, were resolved by Medicare in favor of the County.

On September 29, 1978, 18 months after the running of the 30-day audit report appeal period, appellant submitted an "amended Medi-Cal cost re-

---

[1]Now title 22, California Administrative Code, section 51022 which provides for a 60-day appeal period.

port" for fiscal year ending 1975 to the Department in order to be reimbursed by Medi-Cal for the same items it raised in the Medicare appeal. There was no similar action taken on the 1974 audit report. In October of 1978, the Department ruled that the amended report was really an attempt to appeal the Medi-Cal audit adjustments for 1975, and refused to accept the amended report. The Department told the County that it could appeal the audit report adjustments if it could establish good cause for filing a late appeal pursuant to title 22, California Administrative Code, section 51026.

In May of 1979, appellant requested a late appeal of the audit for fiscal years 1974 and 1975 alleging as good cause in not appealing the Medi-Cal audit within the 30-day limit "a duplication of effort and a means to save [County] and Respondent time, expense, and effort in that 'Medi-Cal' was required to accept the audit and appeal determinations made by 'Medicare' pursuant to § 447.261 of Title 42, Code of Federal Regulations." The County also at that time alleged as good cause the fact that certain errors in the Medi-Cal audit settlement were not discovered until after the 30-day time for appeal had expired.[2] In June of 1979, the Department rejected the late appeal request. The County's request of the Superior Court in and for the City and County of San Francisco for a writ of mandate seeking to compel respondent, as Director of the California Department of Health Services, to permit the filing of a late appeal or a reopening of the Medi-Cal audit was denied in December of 1981.

The County's contentions on appeal are: (1) a timely appeal from the audit report was not necessary because Medi-Cal is required to apply the same reimbursement principles as Medicare and thus should accept the audit and appeal determinations made by Medicare pursuant to 42 Code of Federal Regulations section 447.261; and (2) that in any event, the County has stated good cause for filing a late appeal and that respondent has abused her discretion in refusing to allow a late appeal or a reopening of the cost reports.

I.

■    Appellant's contention that Medi-Cal is bound to follow Medicare's audit appeal determination because Medi-Cal is required to follow Medicare's reimbursement principles is without case or statutory support. To the contrary, federal regulations in effect during March 1977, when the appeal period was allowed to elapse, make clear that not only may a state Medicaid agency adopt its own reimbursement standards and principles consistent

---

[2] At trial, the County did not present good cause for why the errors were not discovered timely, and has not pursued this ground on appeal.

with section 1122 of the Social Security Act (former 42 C.F.R. § 450.30, subd. (a)(2); 39 Fed.Reg. 28288 (Aug. 6, 1974)), but a state Medicaid agency may adopt its own auditing standards as well. (Former 42 C.F.R. § 450.30, subd. (a)(3)(ii); 41 Fed.Reg. 27305 (July 1, 1976).) Moreover, even though California has *chosen* to adopt Medicare principles of reimbursement, it still does not follow that the state is *bound* to follow a Medicare audit determination. That contention goes only to the merits of an administrative appeal and not to the issue relevant here: whether an appeal may be had at all.

Medicare and Medi-Cal audit appeals are separate and distinct processes with independent statutory and regulatory authorization. The federal regulations governing provider reimbursement determinations and appeals (i.e., audit appeals) contained at that time in 42 Code of Federal Regulations section 405.1801 et seq., have not been adopted by California, which has its own regulatory scheme governing audit appeals. The two relevant state statutes are Welfare and Institutions Code section 14170 and 14171. Section 14170 reads in part as follows: "Amounts paid for services provided to Medi-Cal beneficiaries shall be audited by the department in the manner and form prescribed by it. . . ." Section 14171 reads in part as follows: "(a) The director shall adopt regulations establishing an administrative appeal process to review grievances or complaints arising from the findings of an audit or examination made pursuant to Sections 10722 and 14170." Pursuant to the guidance and authority set forth in sections 14170 and 14171 the director adopted for the period relevant here article 1.5 of division 3 of title 22 of the California Administrative Code commencing with section 51018. Section 51018 provided that a provider must appeal and request an informal hearing within 30 days from the date of the issuance of the audit report. Section 51021 provided that if, after an informal hearing, the provider is still dissatisfied, he has 20 calendar days to file for a formal hearing. Section 51026 provides that a late appeal will be dismissed unless the provider can indicate good cause why his appeal was untimely.

It is instructive to examine the case of *Amaro* v. *Unemployment Ins. Appeals Bd.* (1977) 65 Cal.App.3d 715 [135 Cal.Rptr. 493]. In that case, the claimant delayed a month in filing an appeal owing to her dismay at being denied benefits and argued, as appellant essentially does here, that the appeals board was estopped to deny her late appeal because she would win on the merits. In concluding that the appeals board properly denied claimant's request for a late appeal, the court noted: "If the government is to be estopped from applying time limitations every time there is a determination, in retrospect, that a decision was wrong, the ultimate result means the end of time limitations on the right of appeal." (*Id.*, at pp. 721-722.) We agree. The determination of an independent federal administrative hearing may not

be used to circumvent the *procedural* requirements of a separate state administrative appeals process. To rule otherwise would mean a cost report could never be finally closed since a provider could obtain a substantive review of its Medi-Cal cost report merely by filing an appeal at any time after a Medicare audit determination had been made. Accordingly, appellant's contention that the merits of the Medicare audit appeal compel respondent to reopen appellant's cost reports, amend the audit reports, or even to grant an audit appeal is unpersuasive.

## II.

As grounds for filing its late appeal appellant has put forth that it believed a Medicare determination in its favor with regard to the same items would be accepted by Medi-Cal and therefore it reasonably pursued only the Medicare appeal in an effort to save time and expense and to avoid duplicating its efforts. Appellant also argues that in pursuing solely the Medicare appeal, appellant justifiably relied on past Medi-Cal conduct indicating that the 30-day appeal limitation would not bar corrective adjustments in the audit settlement. Appellant contends that these grounds constitute good cause for filing a late appeal to the audit report.

■ The concept of good cause should not be enshrined in legal formalism; it calls for a factual exposition of a reasonable ground for the sought order. The good cause may be equated to a good reason for a party's failure to perform that specific requirement from which the party seeks to be excused. (*Waters* v. *Superior Court* (1962) 58 Cal.2d 885, 893 [27 Cal.Rptr, 153, 377 P.2d 265].) What constitutes "good cause" for filing a late appeal was the issue in *Gibson* v. *Unemployment Ins. Appeals Bd.* (1973) 9 Cal.3d 494 [108 Cal.Rptr. 1, 509 P.2d 945]. In that case, a three-day delay in filing an appeal had occurred because of the heavy workload in a legal office. The California Supreme Court found "no justification for an administrative construction of [the applicable appeals limitation statute] to preclude relief in cases of brief, non-prejudicial delay arising from excusable error of counsel." (9 Cal.3d at p. 496.) Other decisions that have considered "good cause" for filing a late appeal have tended to fall, on the basis of their facts, into the *Gibson* category of de minimus delay, justifying the late appeal (e.g., *Flores* v. *Unemployment Ins. Appeals Bd.* (1973) 30 Cal.App.3d 681 [106 Cal.Rptr. 543] (one day); *United States Postal Service* v. *Unemployment Ins. Appeals Bd.* (1976) 63 Cal.App.3d 506 [134 Cal.Rptr. 19] (three days)), or into the category of substantial delay without much justification, resulting in denial of the late appeal (e.g., *Fermin* v. *Department of Employment* (1963) 214 Cal.App.2d 586 [29 Cal.Rptr. 642] (three months); *Perez* v. *Unemployment Ins. App. Bd.* (1970) 4 Cal.App.3d 62 [83 Cal.Rptr. 871] (five months)). In the case of *Hicks* v. *Sheffield* (1972)

23 Cal.App.3d 441 [100 Cal.Rptr. 274], there was an unstated period of delay accompanied by an "asserted lack of understanding" of appeal procedure by the claimant, although the appeal procedure had been explained. Leave to file a late appeal was denied. It is important to note that the Legislature provided for an informal, nontechnical procedure for appealing denial of unemployment benefits in recognition of the fact that the direct beneficiaries of that legislation are a class of persons who are highly unlikely to be skilled either in law or in semantics and, thus, are particularly dependent on the administrative agency to help them in securing the benefits provided them by law. (*Gibson* v. *Unemployment Ins. Appeals Bd.*, *supra*, 9 Cal.3d at pp. 498-499.) We deal with no such class of persons here.

■ Appellant's argument is that its belief that Medi-Cal would be bound, as a matter of law, to accept the decision of a Medicare audit justifies the late filing of an appeal. This ground is similar to that put forth by the claimant in *Hicks* v. *Sheffield*, *supra*, 23 Cal.App.3d 441, that his "lack of understanding" of the appeals process justified his late filing. Despite the policy of liberal construction of "good cause," that court rejected claimant's contention. We follow that ruling. The fact that the federal regulations in force at the time allowed state Medicaid agencies to adopt their own reimbursement and auditing principles should have put appellant on notice that Medicare determinations might not automatically be followed by Medi-Cal. Appellant possesses sufficient expertise and experience in this field to know enough to seek an administrative ruling whenever a procedure is unclear. The record shows appellant considered filing a Medi-Cal audit appeal at the time the Medi-Cal report was released, but chose instead to pursue only the Medicare appeal on the mistaken notion that Medi-Cal procedures would be disregarded in light of a favorable Medicare determination. Considering the ease with which appellant could have ascertained from respondent whether its interpretation was correct, not to have done so was clearly unreasonable. Appellant's mistake was not a mistake constituting good cause.

■ This reasoning is equally applicable to appellant's final contention, that it reasonably relied on past Medi-Cal conduct indicating the 30-day limitation would not bar subsequent corrections. Appellant did not establish by testimony or other direct evidence that anyone employed by respondent or the State of California misled appellant's employees or agents to the effect that Medi-Cal would waive the appeals limitation with regard to previously audited items if Medicare reached a different result from Medi-Cal's 1974 or 1975 audit reports. The declarations submitted and the oral testimony taken on those declarations show at most that the circumstances under which cost or audit reports had been reopened in the past by Medi-Cal were

not fully understood by appellant.[3] Since appellant's misunderstanding could have been corrected with as little as a letter or telephone call to the Department, to have let the appeal period expire without first having checked with the Department for a clarification was not justifiable. Accordingly, appellant's reliance on the Department's alleged past conduct does not constitute good cause and respondent did not abuse her discretion in denying leave to file a late appeal from the audit report.

The judgment is affirmed.

Scott, J., and Barry-Deal, J., concurred.

---

[3]For example, appellant offered the declaration of Mary Blank, Controller of Children's Hospital of San Francisco. Her declaration stated, "[W]ell after the expiration of the applicable appeal periods, the Children's Hospital of San Francisco requested that Medi-Cal reopen the aforementioned three fiscal years [FYE 9/73, 9/74, 9/75] for the purpose of allowing additional reimbursement to the hospital for subsequently discovered costs. Said request was directed to Medi-Cal on February 9, 1979. . . . Medi-Cal granted same and ultimately reimbursed the hospital for the particular expenses claimed." However, the reimbursements there dealt with items which had not already been the subject of an audit settlement. The costs sought to be reimbursed here have already been audited. To reopen items previously the subject of an audit settlement is contrary to department policy and practice.